**The STATE of Ohio, Appellee,**

**v.**

**SINGH, Appellant.**

[Cite as *State v. Singh,* 157 Ohio App.3d 603, 2004-Ohio-3213.]

Court of Appeals of Ohio,
Seventh District, Columbiana County.

No. 03 CO 8.

Decided June 18, 2004.

606

Robert Herron, Columbiana County Prosecuting Attorney, and John Gamble, Assistant Prosecuting Attorney, for appellee.

John Juhasz, for appellant.

VUKOVICH, Judge.

{¶ 1} Defendant-appellant, Paramjit Singh, appeals from the conviction and sentence entered in the Columbiana County Common Pleas Court after a jury convicted him of aggravated drug possession. The issues presented include (1) whether the indictment contained all the essential elements of the crime; (2) whether the defense attorney should have sought, and the court should have held, a hearing on the reliability of expert drug testing; (3) whether defense counsel was ineffective for various other reasons; (4) whether the state's proof was sufficient; and (5) whether the trial court properly imposed a prison term rather than community control. For the following reasons, appellant's conviction is affirmed. However, his eight-month prison sentence is vacated and modified to community control.

## STATEMENT OF FACTS

{¶ 2} On July 19, 2001, appellant crashed his vehicle into a ditch next door to a police officer's house in East Liverpool, Ohio. Appellant was arrested for driving under the influence and failure to control. After his arrest, officers discovered two Oxycodone pills in a tin of mints in appellant's pocket. Appellant pled no contest to driving under the influence, and the court dismissed the failure-to-control charge. Thereafter, a grand jury indicted appellant for knowingly obtaining, possessing, or using a Schedule II controlled substance, Oxycodone, a fifth-degree felony known as aggravated drug possession as set forth in R.C. 2925.11(A).

{¶ 3} Appellant filed a motion to dismiss the indictment on the grounds that it did not recite all of the essential elements of the offense. Specifically, he contended that a negative averment was required stating that appellant did not

fall under the offense's statutory exception, i.e., that appellant was a practitioner who was not acting in accordance with various sections of the Ohio Revised Code when he possessed the drugs. The trial court overruled the motion to dismiss, holding that the negative averment was not required to be recited in the indictment.

{¶ 4} The case was tried to a jury on January 13 and 14, 2003. The jury found appellant guilty as charged. The court then sentenced appellant to eight months in prison but stayed its imposition pending appeal. The appeal from the aforementioned conviction and sentence was timely filed.

## ASSIGNMENTS OF ERROR NUMBERS ONE AND FOUR

{¶ 5} Appellant sets forth five assignments of error. We shall address the first and fourth assignments of error together, as they stem from the same basic argument and case law. These assignments contend:

{¶ 6} "The trial court erred in failing to dismiss the indictment because failure to allege every element of a crime in the indictment renders a court without jurisdiction and results in a void conviction.

{¶ 7} "Appellant was denied due process * * * when he was convicted of the offense of aggravated possession of drugs and there was insufficient evidence to support his conviction."

{¶ 8} Appellant was indicted for violating R.C. 2925.11(A) for knowingly obtaining, possessing, or using Oxycodone. Pursuant to R.C. 2925.11(B)(1), the offense does not apply to "licensed health professionals authorized to prescribe drugs * * * whose conduct was in accordance with Chapters 3719., 4715., 4723., 4729., 4731., and 4741. of the Revised Code."

{¶ 9} Appellant states that he is a physician, and, thus, the indictment was required to allege that he was a licensed health professional whose conduct was not in accordance with the listed statutory sections. He describes R.C. 2925.11(B)(1) as a "negative averment," which must be asserted in the indictment as an essential element of the offense and which must be proved by the state at trial.

{¶ 10} Since the indictment failed to state that he was a physician whose conduct was not in accordance with the listed sections, appellant claims under the first assignment of error that he was not on notice of all the elements of the offense. Appellant then complains under the fourth assignment of error that the state failed to prove the negative existence of this exception, which is an essential element, and, thus, the evidence was insufficient to support his conviction.

{¶ 11} Appellant cites an Ohio Supreme Court case and an appellate court case, which purportedly stand for the proposition that a negative averment must be alleged in the indictment and proved by the requisite degree of proof if it is a part of the definition of the crime. *Harris v. State* (1932), 125 Ohio St. 257, 181 N.E. 104; *State v. Lockhardt* (1981), 2 Ohio App.3d 338, 2 OBR 383, 441 N.E.2d 1120. In *Harris,* the defendant obtained money from the victim by stating that he would pay the victim's court fines. The defendant was tried for obtaining money under false pretenses. However, the indictment failed to allege that the victim gave the money to the defendant due to an untrue statement by the defendant.

{¶ 12} The Supreme Court noted that if the defendant obtained money from the victim based upon a true statement in order to pay the victim's court fines, which actually existed, but failed to pay the fine, then the crime would not be one of false pretenses. *Harris,* 125 Ohio St. at 263–264, 181 N.E. 104. Only if the defendant lied about the existence of the fines in the first place would the crime involve false pretenses. Id. Thus, the court held that the indictment under those facts must negate by special averment the truth of the pretense alleged. Id. at 260, 181 N.E. 104.

{¶ 13} In *Lockhardt,* the defendant was tried for the unlicensed sale of drugs in violation of R.C. 4729.28, which essentially stated that no person who is not a licensed pharmacist or pharmacy intern shall sell drugs. The First District found that the negative averment was part of the definition of the offense as the very essence of the statute was the lack of a license. Id., 2 Ohio App.3d at 339, 2 OBR 383, 441 N.E.2d 1120, citing and distinguishing *Hale v. State* (1898), 58 Ohio St. 676, 51 N.E. 154.

{¶ 14} As the state argued in response to appellant's motion to dismiss below, these cases are distinguishable from the case at bar. Failure to allege that a statement to obtain money was false in a false pretenses case is much different from failure to set forth that the defendant did not fall under a separate statutory exception in a drug-possession case. Moreover, the exception in our case is not part of the actual definition of the crime; it is contained in a distinct clause. Our case is more closely related to the Supreme Court's *Hale* case.

{¶ 15} In that case, the defendant was basically tried for practicing medicine without complying with the statutory requirements. There existed a statutory exception to the offense for emergencies, family remedies, the military, or out-of-state practitioners. The defendant argued that the indictment must negatively aver the exceptions in order to apprise him of all the essential elements of the offense. However, the Supreme Court held that where a statute contains exceptions in a distinct clause, it is not necessary to state in the indictment that the defendant does not come within an exception, for these are matters of defense

that the prosecution need not anticipate. *Hale,* 58 Ohio St. at 686, 51 N.E. 154. The court noted that these defenses are clearly more properly presented by the defendant since they deal with subject matter that is more especially within his knowledge. Id. at 686, 688, 51 N.E. 154. See, also, R.C. 2923.12(B) (we note in the prior-concealed-carry statute states that it does not apply to law enforcement officers acting within the scope of their duties and note that a concealed-carry indictment need not state that the defendant was not an on-duty police officer).

{¶ 16} The Third Appellate District addressed a case similar to the one before us. *State v. Conley* (1971), 32 Ohio App.2d 54, 61 O.O.2d 50, 288 N.E.2d 296. In that case, the offense was the sale of hallucinogens. The exceptions were similar to those in our case, that is, a licensed manufacturer, pharmacist, physician, etc. The court held that "[t]he exceptions are not part of the definition of the crime but are a part of an immunity granting device, separate from the described crime, used to assure that certain classes will not be included in the scope of the prohibition. This is properly a matter of defense, and there is no requirement that the prosecution prove the defendant is not a member of the excepted classes." Id. at 63, 61 O.O.2d 50, 288 N.E.2d 296. See, also, *State v. Ankney* (Oct. 29, 1987), 3d Dist. No. 7–86–9, 1987 WL 19689.

{¶ 17} Finally, we point to the language of the rule:

{¶ 18} "The indictment shall * * * contain a statement that the defendant has committed a public offense specified in the indictment. * * * The statement may be made in ordinary and concise language without technical averments or allegations not essential to be proved. The statement may be in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged." Crim.R. 7(B).

{¶ 19} In conclusion, the crime herein is possessing a Schedule II drug. The statute has separate and distinct clauses, which listed exceptions. One of these exceptions pertains to a licensed health professional who is authorized to pre-scribe such drugs and who is acting in accordance with the listed statutory sections dealing with health professionals. The exception is not part of the definition of the crime. See *Hale,* 58 Ohio St. at 686, 51 N.E. 154; *Conley,* 32 Ohio App.2d at 63, 61 O.O.2d 50, 288 N.E.2d 296; *Ankney,* 3d Dist. No. 7–86–9. Thus, the exception was not required to be listed in the indictment or proved by the state. See id. The exception is an affirmative defense, as the existence of the exception is within the special province and knowledge of the defendant. See id. Therefore, appellant's indictment gave him proper notice of the offense charged. For the foregoing reasons, assignments of error numbers one and four are overruled.

## ASSIGNMENT OF ERROR NUMBER TWO

{¶ 20} Appellant's second assignment of error contends:

{¶ 21} "Admission of scientific or expert testimony and evidence without the preliminary determination of the reliability of the conclusions to be presented violates the fair trial rights guaranteed by the United States Constitution, Ohio Constitution, and Ohio Rules of Evidence."

{¶ 22} At trial, a forensic scientist from the Ohio Bureau of Criminal Investigation and Identification opined that the two tablets found on appellant contained Oxycodone. Appellant states that his attorney was ineffective for failing to object to the admissibility of this expert testimony. Appellant also argues that the court was required to hold a hearing outside the presence of the jury on the reliability of the scientific evidence dealing with the testing of the two pills. Appellant cites Evid.R. 104(A) and (C) and Evid.R. 702 in support of his argument.

{¶ 23} Pursuant to Evid.R. 104(A), preliminary questions of admissibility shall be determined by the court. Evid.R. 104(C) then states that any hearings on such preliminary matters shall be conducted out of the jury's presence when the interests of justice require. Evid.R. 702 provides that a witness may testify as an expert if all of the following apply:

{¶ 24} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

{¶ 25} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

{¶ 26} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

{¶ 27} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

{¶ 28} "(2) The design of the procedure, test, or experiment reliably implements the theory;

{¶ 29} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."

{¶ 30} Appellant does not contest that the expert testimony herein satisfied Evid.R. 702(A) and (B). Rather, he focuses on Evid.R. 702(C). Appel-

lant contends that the court failed in its gatekeeping function and that such failure runs the risk of admitting the product of "junk science," citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993), 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469.

{¶ 31} The forensic chemist testified that her duty at the BCI & I is to analyze evidence submitted by law enforcement agencies for the presence of dangerous and/or controlled substances. She explained that she performed a visual analysis, as she was familiar with Oxycodone; she also noted that the green pills had marked logos and compared the pills to her reference material. Two officers testified that the number "80" was apparent on the green pills. Officer Hedrick testified without objection that in his experience as a police officer and former cancer patient, these pills were Oxycodone.

{¶ 32} The forensic chemist then confirmed her visual analysis with an instrumentation called a gas chromatograph mass spectrometer. She stated that she has run chemical tests to detect controlled substances thousands of times in the past three and one-half years in the laboratory. She explained that she cut pieces off the pills to test them and that these pieces were destroyed by the chemical tests.

{¶ 33} Notably, before the expert answered the state's question and concluded that the pills contained Oxycodone, appellant's counsel explicitly stated that he had no objection to the scientist rendering her opinion regarding the contents of the pills. Counsel also had no objection to admission of this expert's report later. Appellant now claims that the expert's conclusions as to the presence of Oxycodone were inadmissible because her methodology was not explained in detail.

{¶ 34} Even in the United States Supreme Court's *Daubert* case, upon which appellant bases his argument, the trial court was called upon to make only a preliminary assessment under the evidentiary rule and function as a "gatekeeper" because it was "faced with a proffer." Here, there was no proffer or objection, and, thus, appellant is subject to the doctrine of waiver of any errors in admitting evidence. See Evid.R. 103(A)(1).

{¶ 35} Also contrary to appellant's argument that the court has a duty even without objection, the 1994 Staff Note to Evid.R. 702 states that the issues can typically be resolved *by objection* and decision during trial but that sometimes the issues may need to be heard in pretrial hearing *where they were raised in a proffer*. See *State v. Scott* (Sept. 21, 2001), 7th Dist. No. 98CA124, 2001-Ohio-3359, 2001 WL 1122072, at ¶ 13. In either case, the Staff Note does not contemplate a strict duty on the part of the trial court to ensure that the state meticulously explains the methodology of the scientist. Rather, it contemplates objection during trial or presentation in a proffer before trial.

{¶ 36} Therefore, appellant's argument regarding the trial court's alleged failure is subject to only a plain-error review. See id.; *State v. Moreland* (1990), 50 Ohio St.3d 58, 63, 552 N.E.2d 894; Evid.R. 103(D). Other courts have similarly concluded even after the *Daubert* holding. *State v. Gandarilla* (Mar. 19, 2002), 10th Dist. No. 01AP–942, 2002-Ohio-1258, 2002 WL 416979; *State v. Funk* (Oct. 25, 2001), 10th Dist. No. 00AP–1352, 2001-Ohio-4110, 2001 WL 1286463; *Nilavar v. Osborn* (2000), 137 Ohio App.3d 469, 491, 738 N.E.2d 1271 (2d Dist.) (all stating that the failure to argue that expert testimony was inadmissible pursuant to the evidentiary rule requiring testimony to be based upon reliable scientific, technical, or other specialized information waives all but plain error).

{¶ 37} Crim.R. 52(B) provides that plain errors affecting substantial rights may be noticed although they were not brought to the attention of the court. The discretionary decision to correct plain error can take place only where obvious error affected the outcome of the case. *State v. Noling,* 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, at ¶ 19. The decision to correct plain error must be made with utmost caution under exceptional circumstances and only to prevent a manifest miscarriage of justice. Id. Crim.R. 52 allows us to take corrective action, but it does not require us to do so. Even if there were some error, such exceptional circumstances do not exist in this case.

{¶ 38} As aforementioned, appellant also raises an ineffective-assistance-of-trial-counsel argument. As discussed further under appellant's assignment of error on this topic, ineffective assistance of counsel requires deficient performance that prejudiced the defense in that there exists a reasonable probability that, but for the error, the result of trial would have been different. *State v. Kole* (2001), 92 Ohio St.3d 303, 306, 750 N.E.2d 148.

{¶ 39} Here, trial counsel could very well have decided that pressing for a detailed explanation of how the test works or how the expert ensured reliable results would serve no purpose where the expert has run this familiar and well-established chemical test thousands of times to detect drugs. The theory of the defense was not to dispute the existence of Oxycodone in the green pills marked with "80." Moreover, scientific testing is not even a requirement to prove the contents of the pill. See, e.g., *State v. Maupin* (1975), 42 Ohio St.2d 473, 71 O.O.2d 485, 330 N.E.2d 708. The visual inspection and conclusions reached by the officer and the scientist together could easily convince a jury that the pills were Oxycodone. Deficient performance on counsel's part has not been established; nor has appellant established any type of prejudice to his defense. Thus, neither the ineffective-assistance nor the plain-error argument has merit. For the foregoing reasons, this assignment of error is overruled.

## ASSIGNMENT OF ERROR NUMBER THREE

{¶ 40} Appellant's third assignment of error provides:

{¶ 41} "Appellant was denied the effective assistance of counsel for a number of unprofessional errors."

{¶ 42} In determining whether counsel's performance was constitutionally deficient, our analysis is highly deferential. *State v. Bradley* (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373, citing *Strickland v. Washington* (1984), 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. To demonstrate that trial counsel was ineffective, appellant must establish that counsel's performance was so deficient and his errors so serious that he was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. Appellant must also demonstrate that any such error or deficiency prejudiced the defense. Id.

{¶ 43} Most decisions regarding defense theories and witness questioning are afforded significant latitude as matters of trial strategy. Debatable trial tactics typically do not constitute ineffective assistance of counsel. *State v. Clayton* (1980), 62 Ohio St.2d 45, 47, 16 O.O.3d 35, 402 N.E.2d 1189. To prevail on this issue, appellant must overcome a presumption that the decisions contested constituted sound trial strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 44} Besides raising the alleged instance of ineffective assistance of counsel in the prior assignment of error, appellant also briefly sets forth other examples of conduct he apparently believes to be deficient and prejudicial. Because he lumps these examples together and argues that they collectively establish that counsel was not functioning as an attorney as contemplated by the Sixth Amendment, it seems that he is utilizing a type of cumulative-error analysis rather than arguing that each example requires reversal in and of itself. Regardless, ineffective assistance is not apparent.

{¶ 45} First, appellant complains that trial counsel should not have focused on the fact that his blood was never tested for Oxycodone when they tested his breath for alcohol. Appellant argues that the issue was whether he knowingly had Oxycodone on his person, not in his bloodstream. However, there was nothing improper about such questions. Counsel may have been attempting to imply that had they tested appellant, his blood would have contained no controlled substances; this would support appellant's claim at trial that the drugs were not his.

{¶ 46} Appellant also complains about trial counsel's suggestion that the identifying number on the laboratory report was evidence of tampering. He

states that such claim was so outrageous that the court scolded counsel for misleading the jury. Counsel's suggestion was not as strong as appellant makes it out to be. It appears that counsel was just confused by the numbering system used by the person who had made the evidence label. Although the court did say "misleading," it does not appear to this court that counsel's misconstruction was intentional or outrageous, as appellant claims. Counsel's line of questioning does not constitute deficient performance or confer prejudice on appellant's defense. In fact, the court instructed counsel to revisit the issue with the forensic expert rather than the officer.

{¶ 47} Another complaint is that trial counsel declared that if the prosecutor objected one more time to his closing argument, he would seek a mistrial. The state objected three times in four pages of trial counsel's closing argument. Apparently, counsel was upset by what he believed to be unwarranted interruptions. The statement is not deficient performance or prejudicial to appellant's defense. Notably, all three state objections were overruled.

{¶ 48} Appellant also complains that trial counsel should not have made a claim that appellant was the victim of post-September 11 hysteria. With regard to this complaint (and all the other complaints for that matter), appellant fails to set forth the page numbers in the two-volume transcript where these alleged occurrences took place. This violates App.R. 12(A)(2) and App.R. 16(A)(7) and (D) and allows this court to disregard his arguments. We are not required to search the record for mention of September 11. Regardless, the effect of these allegations does not constitute performance so deficient that appellant was deprived of his right to counsel; nor can we find prejudice to his defense. Hence, this assignment of error is overruled.

## ASSIGNMENT OF ERROR NUMBER FIVE

{¶ 49} Appellant's fifth and final assignment of error provides:

{¶ 50} "The trial court abused its discretion in failing to impose community control sanctions without making factual findings to support the sentence."

{¶ 51} Appellant was convicted of a fifth-degree felony. The available prison terms for this crime are six, seven, eight, nine, ten, eleven, or twelve months. R.C. 2929.14(A)(5). The trial court sentenced appellant to eight months in prison.

{¶ 52} First, this court holds that the record at the sentencing hearing does not reflect that the court found that a minimum sentence would demean the seriousness of the offense or would not adequately protect the public. Under R.C. 2929.14(B), if an offender has not served a prior prison term, the court can deviate from the minimum sentence only after finding that the

minimum sentence would demean the seriousness of the offender's conduct or would not adequately protect the public. *State v. Edmonson* (1999), 86 Ohio St.3d 324, 326, 715 N.E.2d 131. Only findings, not reasons, are required to be made on the record when imposing a minimum sentence, citing *State v. Viers,* 7th Dist. No. 01JE19, 2003-Ohio-3483, 2003 WL 21503341.

{¶ 53} Here, the judgment entry makes a finding that a minimum sentence would demean appellant's conduct. However, the Supreme Court has determined that the language "finds on the record" in R.C. 2929.14(B) means pronouncement at the sentencing hearing, not later in an entry. *State v. Comer,* 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473, at ¶ 26.

{¶ 54} At the sentencing hearing, the closest the court came to making one of the requisite findings for deviating from the minimum was where the court stated:

{¶ 55} "And in weighing the seriousness of the offense, and without demeaning his conduct, I find that a prison term is mandated by the statute in this case.

{¶ 56} "The Defendant is sentenced to the Lorain Correctional Institution for a period of eight months, and to pay the court costs of this action."

{¶ 57} This can only be interpreted as the court stating that *community control* would demean the seriousness of the offender's conduct. It clearly does not state that a *minimum sentence* would demean the seriousness of his conduct. Therefore, we hold that the trial court improperly imposed more than the minimum sentence of six months upon appellant. Appellant's eight-month prison sentence is hereby reversed.

{¶ 58} We must now determine whether the trial court properly imposed a prison term rather than imposing community control. Appellant urges that he should have been granted community control rather than sentenced to prison. He relies on R.C. 2929.13 and contends that the court failed to make the requisite findings for imposing prison over community control.

{¶ 59} Our review of the sentence for this fifth-degree felony revolves around the trial court's application R.C. 2929.13(B)(1) to the facts in this case. See R.C. 2925.11(C)(1)(a); R.C. 2929.13(E)(1). The sentencing court shall determine whether any of the circumstances listed in R.C. 2929.13(B)(1)(a) through (i) are applicable.

{¶ 60} If the court finds that one of those circumstances applies and if the court, after considering the factors set forth in R.C. 2929.12, finds that a prison term is consistent with the purposes and principles of sentencing set forth in R.C. 2929.11 and finds that the offender is not amenable to an available community

control sanction, the court shall impose a prison term upon the offender. R.C. 2929.13(B)(2)(a).

{¶ 61} To the contrary, R.C. 2929.13(B)(2)(b) provides that if the court does not make one of the R.C. 2929.13(B)(1) findings and, after considering the factors set out in R.C. 2929.12, the court finds that a community control sanction is consistent with the purposes and principles of R.C. 2929.11, then the court shall impose a community control sanction.

{¶ 62} It is possible for a case to fall outside both of the above mandatory sentencing scenarios, in which case the court's decision is more discretionary. *State v. Simpson,* 7th Dist. No. 01CO29, 2002-Ohio-5374, 2002 WL 31243530. For instance, if the trial court does not find that any of the R.C. 2929.13(B)(1) factors apply but also does not find that community control is consistent with the R.C. 2929.11 purposes and principles, then the trial court can still use its broad discretion to impose a prison term. Id., 2002-Ohio-5374 at ¶ 70.

{¶ 63} Pursuant to R.C. 2929.19(B)(2)(a), *when the court imposes a prison term for a fourth or fifth degree felony, the court must make findings supported by its reasons for imposing the prison term* based upon the overriding purposes and principles of felony sentencing set forth in R.C. 2929.11 and any factors listed in R.C. 2929.13(B)(1) that it found applicable to the offender. Id., 2002-Ohio-5374, at ¶ 71.

{¶ 64} Here, the trial court made a finding at the sentencing hearing (and in the judgment entry) that one of the factors listed in R.C. 2929.13(B)(1) applied to appellant. Specifically, the court found it disturbing that appellant used his occupation and profession as a physician to facilitate this offense. See R.C. 2929.13(B)(1)(d). Hence, the court satisfied that portion of R.C. 2929.19(B)(2)(a). The question remaining then is whether the court made sufficient findings and gave sufficient reasons for imposing a prison term based upon the overriding purposes and principles of felony sentencing set forth in R.C. 2929.11.

{¶ 65} According to R.C. 2929.11(A), the overriding purposes and principles of sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve these purposes, the court must consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution. R.C. 2929.11(A). In addition to achieving the purposes of sentencing, the court should be careful that the sentence is commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim and is consistent with sentences imposed for similar crimes. R.C. 2929.11(B).

{¶ 66} The court stated at the sentencing hearing that it had read the presentence investigation report and considered the factors in the statute. The

court advised that it weighed the seriousness of the offense and found that prison was mandatory in order to avoid demeaning appellant's conduct. The court opined that appellant showed no remorse, that he either lied in the presentence investigation report or on the stand, and that he had a severe drug and alcohol problem that he refused to acknowledge.

{¶ 67} Although the judgment entry provides some support for the court's reasoning, we can view the sentencing transcript only when reviewing for appropriate findings with reasons due to the Supreme Court's recent holding in *Comer*. That case interpreted R.C. 2929.19(B)(2)'s requirement of findings and reasons to mean that these be made orally at the sentencing hearing rather than merely written later in a judgment entry. *Comer*, at ¶ 20.

{¶ 68} The sentencing transcript does not sufficiently set forth the reasoning of the trial court in determining that appellant should receive prison rather than community control under the relevant purposes and principles of sentencing. There is no mention of any need to protect the public from appellant's potential recidivism, the goal of deterring others, or the need to incapacitate or punish appellant.

{¶ 69} Appellant was convicted of possessing two Oxycodone pills. He is a first-time offender. He is a physician, and although he may (or may not) have used this position to obtain the pills, he did not use his position to commit a crime against another or to obtain pills for another. The crime was a fifth-degree felony, and community control is the typically chosen option for this degree of offense.

{¶ 70} We may vacate a sentence if we find by clear and convincing evidence that the record does not support the sentence or the sentence is otherwise contrary to law. *Comer*, at ¶ 10, citing R.C. 2953.08. As previously stated, the court failed to set forth the required findings for imposing more than a minimum sentence upon appellant. Thus, the eight-month sentence must be reversed. Moreover, we are clearly convinced that the court failed to set forth at sentencing its findings with sufficiently supportive reasons for refusing to impose community control on appellant and that its findings and reasons do not support a prison term.

{¶ 71} Thus, we have decided to vacate the prison term imposed upon appellant and impose community control. See R.C. 2953.08(G)(2) (permitting this court to reduce or otherwise modify a sentence where we clearly and convincingly find that the record does not support the court's findings under R.C. 2929.13[B], the community control statute, or that the sentence is otherwise contrary to law). The term of community control shall be five years, the maximum permissible by statute.

{¶ 72} We hereby notify appellant, as per R.C. 2929.19(B)(5), that if he violates the terms of probation or any law or leaves the state without the permission of the trial court or his probation officer, the trial court may impose a longer or more restrictive community control or it may impose a prison term of six months.

{¶ 73} For the foregoing reasons, appellant's conviction is affirmed. However, his prison sentence is vacated and modified to community control.

Judgment accordingly.

GENE DONOFRIO, J., concurs.

DEGENARO, J., dissents.

DEGENARO, Judge, dissenting.

{¶ 74} I agree with the majority's decision to affirm appellant's conviction and vacate his sentence. The only reason I disagree with the majority's opinion is because it modifies appellant's sentence and imposes community control sanctions rather than remanding the matter to the trial court for resentencing.

{¶ 75} In its opinion, the majority finds no fault with the trial court's finding that one of the factors in R.C. 2929.13(B)(1) applies to appellant. As the majority correctly states, the trial court erred because it failed to give the reasons supporting its conclusion that a prison term is consistent with the purposes and principles of sentencing set forth in R.C. 2929.11. Thus, appellant's sentence must be vacated.

{¶ 76} The majority modifies appellant's sentence and imposes community control sanctions. In effect, it is stating that it would be contrary to law for the trial court to impose any prison sentence upon appellant. But the majority fails to state why "a community control sanction or combination of community control sanctions is consistent with the purposes and principles of sentencing set forth" in R.C. 2929.11 under the facts of this case. See R.C. 2929.13(B)(2)(b). And it fails to explain why a prison term would be inconsistent with those same purposes and principles of sentencing. By not doing so, the majority is committing the same error as the trial court: it ignores the mandates of the sentencing statutes to impose the sentence it believes is most appropriate.

{¶ 77} In this case, the trial court is in the best position to impose an appropriate sentence. If that sentence is community control, then the trial court is also in the best position to decide what community control sanctions are most appropriate. There is no reason for this court to usurp the trial court's natural role in this case. Appellant's conviction should be affirmed, his sentence should be vacated, and this matter should be remanded to the trial court for resentencing.