[Cite as *In re D.F.*, 193 Ohio App.3d 78, 2011-Ohio-1004.]

STATE OF OHIO, NOBLE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

IN RE D.F.                                  )        CASE NO.     10 NO 374
                                            )
                                            )        O P I N I O N
                                            )
                                            )
                                            )

CHARACTER OF PROCEEDINGS:            Civil Appeal from Common Pleas Court,
                                     Juvenile Division, Case No. 210-2008.


JUDGMENT:                            Conviction Reversed.


APPEARANCES:

      Clifford Sickler, Noble County Prosecuting Attorney, and Jamie Riley, Assistant Prosecuting Attorney, for appellee.

Lindsey Donehue, for appellant.



JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro


                                     Dated:  February 28, 2011

VUKOVICH, Judge.

{¶ 1} Juvenile-appellant D.F. appeals after he was adjudicated a delinquent child by the Noble County Juvenile Court. He contends that his incriminating statements should have been suppressed because he was not provided with *Miranda* warnings prior to questioning on whether he had provided his prescription medication to a fellow detention-center resident. However, merely because appellant was a resident in a youth-detention facility does not mean that he was in custody for purposes of *Miranda*. To the contrary, *Miranda* warnings are not required for on-scene-investigation questioning of residents regarding acts that occurred in a detention center if there are no additional impositions on the residents' freedom above those that normally occur in that facility.

{¶ 2} Appellant also argues that the state did not sufficiently prove that the confiscated pill was a controlled substance. Appellant states that the two witnesses were not shown to be experts on pill identification. He notes that they received their information from an unnamed nurse, who did not testify and whose records were not introduced. As appellant points out, even if testimony on what the corrections officer or superintendent learned from the nurse regarding the pill was admissible, that testimony was presented only at the suppression hearing and was not reiterated at the actual trial. For the following reasons, appellant's conviction is reversed, because the state presented insufficient evidence *at trial* that the confiscated pill fit the definition of a controlled substance as used in R.C. 2925.11.

STATEMENT OF THE CASE

2

{¶ 3}   Appellant was a 15-year-old resident in the Muskingum County Juvenile Detention Center.  After the residents in his pod attended a youth program in the facility, a pen was discovered to be missing.  For safety reasons, this pen had to be recovered; the residents were thus asked to line up outside their individual rooms.  Appellant voluntarily stated that another resident (Resident S) took the pen and flushed it down the toilet.

{¶ 4}   A corrections officer approached Resident S and discovered that Resident S had two pills in his book:  a red capsule and a small, round, dark yellow pill that was partially dissolved.  It was ascertained that only one of these pills belonged to Resident S.  Upon consultation with the nurse, the officer apparently learned that the other pill was Adderall and that appellant was the only resident to whom the nurse had dispensed this drug.

{¶ 5}   The corrections officer and his supervisor then approached appellant in his room.  He was asked how Resident S had obtained appellant's pill, and appellant responded by stating that he had "cheeked" the pill when the nurse gave it to him.  Appellant was then charged with complicity to aggravated possession of drugs, a fifth-degree felony under R.C. 2925.11(A) and (C)(1)(a).  His case was transferred to Noble County, since this was his permanent residence.

{¶ 6}   Appellant filed a motion to suppress his statement on the grounds that the corrections officer and superintendent had failed to provide him with *Miranda* warnings before questioning him.  The court denied the motion after holding a suppression hearing during which the corrections officer and the superintendent testified.  Immediately after the suppression hearing, the trial began, and the state recalled these

two witnesses.  Thereafter, the court adjudicated appellant a delinquent child.  In a May 26, 2010 entry, appellant was sentenced to a minimum sentence of six months and a maximum sentence of the attainment of age 21.  Appellant filed a timely notice of appeal.

## ASSIGNMENT OF ERROR NUMBER ONE

**{¶ 7}**  Appellant's first assignment of error alleges:

**{¶ 8}**  "The trial court made a fatal error when it denied appellant's motion to suppress because appellant was in custody and subject to custodial interrogation, a reasonable person in appellant's situation would have believed he was in custody, appellant was interrogated, and the trial court's admission of appellant's confession was not harmless error."

**{¶ 9}**  The typical *Miranda* inquiry asks whether the suspect was in custody and whether the suspect was subject to interrogation.  *Miranda v. Arizona* (1966), 384 U.S. 436, 467-471.  Here, the interrogation prong is undisputed, leaving the custody prong for our review.  A person is in custody for purposes of *Miranda* when he is placed under formal arrest or his freedom of movement is restrained to a degree associated with a formal arrest.  *Minnesota v. Murphy* (1984), 465 U.S. 420, 434.  The totality of the circumstances must show that a reasonable person in the defendant's position would have believed that he was not free to leave.  *State v. Gumm* (1995), 73 Ohio St.3d 413, 429.  The first issue here is whether appellant is considered to have been in custody during the interrogation merely because he was a detention-center resident.

**{¶ 10}** It is fairly well established that the freedom-of-movement test is different for residents of prisons because they are not free to leave in any event.  The situation in

4

which corrections officers are conducting an on-the-scene investigation of acts that occurred in the facility is treated as a distinct fact pattern by the Ohio and federal courts that have addressed the issue.

{¶ 11} Specifically, it has been held that *Miranda* warnings need be provided to a resident-inmate being questioned by corrections officers about behavior that occurred in a detention facility only if there is added imposition on that resident's freedom of movement, i.e., a change in the inmate's surroundings making his movement more restricted than it is in the normal prison situation. *State v. Porter*, 178 Ohio App.3d 304, 2008-Ohio-4627, ¶16 (2d District); *State v. Simpson*, 10th Dist. No. 01PAP-757, 2002-Ohio-3717, ¶34-35; *United States v. Ozuna* (C.A.6, 1999), 170 F.3d 654, 658, fn. 3; *State v. Peeples* (1994), 94 Ohio App.3d 34, 41-42 (4th District); *Garcia v. Singletary* (C.A.11, 1994), 13 F.3d 1487, 1490-1492; *United States v. Conley* (C.A.4, 1985), 779 F.2d 970, 972-973; *United States v. Scalf* (C.A. 10, 1984), 725 F.2d 1272, 1276; *State v. Schultz* (Sept. 22, 1983), 8th Dist. No. 46043, 1983 WL 4749; *Cervantes v. Walker* (C.A.9, 1978), 589 F.2d 424, 427-428. As in the typical *Miranda* case, a totality-of-the-circumstances test is employed to determine whether there were sufficient additional restrictions imposed upon the resident to require *Miranda* warnings. Id.

{¶ 12} In *Porter*, Ohio's Second District Court of Appeals found that *Miranda* warnings should have been given when the defendant was singled out, removed from her jail cell, questioned, handcuffed, moved to a dressing area, questioned again without handcuffs, handcuffed again, moved to the shower, ordered to strip, required to squat and cough, allowed to dress, informed that a search warrant was on its way and that a body-cavity search would be performed at the hospital, handcuffed again, and

5

moved to the transport area, at which point she admitted that there were drugs hidden inside her body. *Porter*, 178 Ohio App.3d 304, 2008-Ohio-4627, at ¶21-26.

{¶ 13} In *Cervantes*, the defendant was being moved to a new cell due to a fight with another inmate. He was directed to gather his belongings and to sit in the jail library to talk with an officer before the move. When the defendant left his belongings on a table outside the library, the officer conducted a routine search, finding a green substance. The officer entered the library with the substance and asked, "What's this?" to which the defendant replied, "That's grass, man." The United States Court of Appeals for the Ninth Circuit held that *Miranda* warnings were not required because this was an on-the-scene investigation with no added imposition on the defendant's freedom of movement. *Cervantes*, 589 F.2d at 428.

{¶ 14} In *Scalf*, the defendant was questioned in his cell soon after the stabbing death of another inmate. The United States Court of Appeals for the Tenth Circuit characterized the situation as "on-the-scene questioning," held that the defendant's freedom of movement was not restricted more than is usual in the prison context, and concluded that *Miranda* warnings were unnecessary. *Scalf*, 725 F.2d at 1276.

{¶ 15} In another case, a civilian employee of a prison was killed in the metal shop. Standard prison procedure called for strip searches of all metal-shop employees. Before conducting the search, while the employees were all lined up, a corrections officer noticed blood on the defendant. An officer asked the defendant whether he had caused the employee's death, and the defendant responded in the affirmative. Ohio's Fourth Appellate District held that *Miranda* warnings were not required because this situation constituted an on-the-scene investigation and that the restricted movement

6

was not over and above that normally occurring in a prison setting. *State v. Bradley* (Sept. 22, 1987), 4th Dist. No. 1583, 1987 WL 17303.

{¶ 16} Here, a pen went missing, and all residents were asked to stand outside their cells pursuant to standard facility procedure. Appellant volunteered that Resident S took the pen. Resident S was found in possession of two pills, one of which did not belong to him. As appellant was the only resident to whom the nurse provided this pill, a corrections officer and his supervisor entered appellant's cell and asked him how Resident S came to possess appellant's medication. Appellant incriminated himself by admitting that he had "cheeked it."

{¶ 17} The encounter lasted only one to two minutes in appellant's own cell. He was not handcuffed, searched, or removed from the general facility population. This was an on-the-scene investigation of a missing potentially dangerous object and then a contemporaneous investigation of a drug offense by corrections officers in a prison setting. Under the totality of the circumstances, appellant's freedom of movement was not imposed upon over and above the normal situation in the detention facility environment. Therefore, *Miranda* warnings were unnecessary.

ASSIGNMENT OF ERROR NUMBER TWO

{¶ 18} Appellant's second assignment of error provides:

{¶ 19} "The state did not prove beyond a reasonable doubt that the pill obtained by the officers was a controlled substance."

{¶ 20} Appellant states that the only evidence that the pill was a controlled substance was presented at the suppression hearing and was not repeated at the trial. Appellant argues that the corrections officer and the superintendent were not shown to

7

have experience in identifying pills and thus could not provide testimony on the type of pill confiscated. Appellant also complains that these witnesses received information on the type of pill from only an unnamed facility nurse, but the nurse did not testify, and the nurse's notes were never introduced.

{¶ 21} Regarding the identity of the pill, the corrections officer testified to the following at trial:

{¶ 22} "Q  And you found what in it?

{¶ 23} "A   Two pills, one was a red capsule pill and the other was a dark yellowish pill.

{¶ 24} "Q  Okay, did you investigate the source of those pills?

{¶ 25} "A  Yes I contacted our nurse that we had on staff and she looked into it and verified –

{¶ 26} "[Defense counsel]:  I'm going to object to that, I can't, the lack of right to confrontation and hearsay.

{¶ 27} "COURT:  Sustained.

{¶ 28} "Q  Did you ask Nurse Rush about the pills?  Did you ask Mr. Rush about the pills?

{¶ 29} "A  (inaudible)

{¶ 30} "Q  Yes.

{¶ 31} "A  Yes.

{¶ 32} "Q  To the best of your knowledge did he talk with the nurse?

{¶ 33} "A  Yes I do believe he talked with the nurse.

{¶ 34} "Q   In the course of the regular activities of the detention facility is the nurse the person who would have custody of the record regarding pills and medications?

{¶ 35} "A   Yes she is.

{¶ 36} "Q   Okay, the nurse was the proper person which you would ask regarding these medications, or these pills correct?

{¶ 37} "A   Yes.

{¶ 38} "Q   What did you do after you found out information about the pills from the nurse?

{¶ 39} "A   We, took youth [DF] into his room and asked him about the pills.

{¶ 40} "Q   Is this something that you would have done to every single person in that Pod?

{¶ 41} "A   Yes we would have, the nurse came back and identified the two pills.

{¶ 42} "[Defense counsel]:  I'm going to object.

{¶ 43} "COURT:  Sustained.

{¶ 44} "Q   We can't talk about what the nurse identified okay."

{¶ 45} After the corrections officers testified, the facility superintendent testified, as relevant to the identity of the pill and the nurse's information, to the following:

{¶ 46} "A   I asked [DF] about the pills that were found on [Resident S] and he admitted that he had given one of those pills to [Resident S].

{¶ 47} "Q   Okay.  So to the best of your knowledge was [Resident S] prescribed to that pill?

{¶ 48} "[Defense counsel]:  I'm going to object.

9

{¶ 49} "COURT:  Until the foundation is laid I'm going to sustain.

{¶ 50} "[Prosecutor]:  Okay.

{¶ 51} "Q   In [sic] the course of your normal duties to know which juvenile residence [sic] are prescribed to what pills?  What there [sic] prescriptions are?

{¶ 52} "A   I don't know if it's necessarily my direct knowledge on every resident that comes in.  Sometimes I might know, sometimes I might not.  I mean that's handled through our nursing department.

{¶ 53} "Q Okay, but someone there normally does, correct?

{¶ 54} "A  Yes, that's correct.

{¶ 55} "Q  And do you have access to those records?

{¶ 56} "A  Yes I do.

{¶ 57} "Q  And are you able to review those records?

{¶ 58} "A  Yes I do.

{¶ 59} "Q  And are you able to view those records at any time?

{¶ 60} "A  Yes.

{¶ 61} "Q  And did you view those records regarding youth [DF] or [Resident S]?

{¶ 62} "A  I did not view them.  It was done by our nurse and she gave me that information.

{¶ 63} "Q   Okay.   In the course of the Muskingum Detention Facility who administers the medications to the juvenile resident's [sic] there?

{¶ 64} "A  If it's during the day shift hours through the week our nurse that we contract through the Health Department she dispenses those meds.  If it's on off times, week-ends, Holidays, it's a trained supervisors [sic] that pass them out."

10

{¶ 65} "Q  Okay, and are the medications administered in the presence of the nurse or the supervisor to each resident?

{¶ 66} "A  Yes they are.

{¶ 67} "Q  And are the resident's [sic] expected to take the medication in the presence of the nurse or supervisor?

{¶ 68} "A  Yes they are.

{¶ 69} "Q  Okay.  So if everything would have taken place in accordance with the normal practices and procedures and the policies of the detention facility there should be no reason why any resident should have pills on their person or in their possession correct?

{¶ 70} "A  That's correct.

{¶ 71} "Q  And did youth [DF] state anything to you regarding a pill?

{¶ 72} "A  He did say that he had cheeked the medication or not swallowed it when he was given the pill?

{¶ 73} "Q  And is this against the policies of the detention facility?

{¶ 74} "A  Yes it is."

{¶ 75} The state then rested, and defense counsel moved for an acquittal on the grounds that the state did not prove the pill was a controlled substance.  The state responded that they had proved it with the nurse's records and that they had proved that the nurse administers prescribed medications.  The state urged that the substance is obviously controlled if it was a prescription.  Defense counsel responded that even if the records are maintained in the ordinary course of business, no records were introduced, and the only evidence was that appellant cheeked an unidentified pill and

11

gave it to Resident S. He noted that the pill could have been a vitamin. The court overruled the acquittal motion and adjudicated appellant as having committed complicity to aggravated drug possession.

{¶ 76} It should first be noted that at the suppression hearing, the corrections officer testified that the pill that did not belong to Resident S was Adderall and that appellant was the only resident to whom this pill was prescribed. The superintendent then testified at the suppression hearing that the nurse identified the pill as belonging to appellant. He also stated that Adderall is a controlled substance.

{¶ 77} However, suppression testimony cannot be considered in determining whether there was sufficient evidence that the pill was a controlled substance. Even though the hearings occurred back-to-back, they are two separate phases. Notably, defense counsel's objections as to hearsay and foundation were *sustained* at trial. At suppression, there was no opportunity to object on these grounds because the hearing was a preliminary, miscellaneous proceeding used to determine whether a statement should be suppressed. See *State v. Edwards*, 107 Ohio St.3d 169, 2005-Ohio-6180, ¶14 (court may rely on hearsay at suppression hearing, even though it would not be admissible at trial), citing Evid.R. 101(C)(1) (Rules of Evidence do not apply to determinations prerequisite to rulings on the admissibility of evidence).

{¶ 78} Thus, the trial court and this court can view only the testimony presented at the actual trial to determine the sufficiency of the evidence regarding whether the pill was a controlled substance. We point this out because it appears that the state may have believed that it had presented certain testimony because the witness had just

testified in more detail at the suppression hearing mere minutes before the trial. We now continue to discuss the sufficiency of the evidence *at trial*.

**{¶ 79}** Sufficiency of the evidence deals with legal adequacy rather than the weight or persuasiveness of the evidence. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386. In viewing a sufficiency-of-the-evidence argument, we evaluate the evidence in the light most favorable to the prosecution. *State v. Goff* (1998), 82 Ohio St.3d 123, 138. A conviction cannot be reversed for insufficient evidence unless the reviewing court determines that no rational factfinder could have found that the elements of the offense were proven beyond a reasonable doubt. Id.

**{¶ 80}** Appellant was adjudicated as being complicit in the possession of a controlled substance by Resident S in violation of R.C. 2925.11(A) and (C)(1)(a), which involve a Schedule I or II controlled substance. A Schedule II controlled substance includes stimulants such as amphetamines. R.C. 3719.41, Schedule II (C)(1). See also R.C. 2925.01(A), R.C. 3719.01(BB). Adderall is a stimulant that contains amphetamines and is comparable to Ritalin. http://www.hopkinsmedicine.org/news/ publications/johns_hopkins_health/Fall_2009/Abusing_the_System. Thus, Adderall is a Schedule II controlled substance.

**{¶ 81}** Yet, there was no testimony as to the contents of Adderall. Even if a court can take judicial notice that Adderall contains amphetamines, there was not even testimony presented *at the trial* that the pill was Adderall. (The identity of the pill as Adderall was presented only at the suppression hearing, and as set forth previously, evidence that was presented only at a suppression hearing cannot be used to establish

13

the elements of the offense.)  The state suggests that evidence that a pill was a prescription medication is sufficient evidence that it was a controlled substance.

{¶ 82} However, the state did not even prove at trial that the pill was a prescription medication.  The corrections officer said nothing about prescriptions in his trial testimony.  The state questioned the superintendent about prescriptions, but the most relevant mention resulted in a sustained objection, and other mentions of prescriptions really did not result in any answer relevant to appellant.  For example, the state tried to elicit that the superintendent saw appellant's prescription record, but he answered that he did not.  He did say that "[i]t was done by our nurse and she gave me that information."  Yet, what information he obtained was never revealed.  The state then switched to speaking of the dispensing of medications, which does not necessarily mean prescription medications.  Thus, the fact that appellant takes a prescription medication was not actually established.

{¶ 83} Contrary to the state's suggestion, it cannot be presumed that the mere fact that a nurse hands out pills means that every pill is a prescription medication.  It is just as likely that youth-detention-facility residents are not permitted to carry their own bottles of ibuprofen or over-the-counter allergy medication but instead must have a dose dispensed by a facility nurse.

{¶ 84} Regardless of this line of inquiry, even if the state's evidence could allow an inference that the pill dispensed to and cheeked by appellant was a prescription medication, there is no indication that the pill fell under Schedule I or II as appellant was charged. As aforementioned, the pill was not named, nor were its chemical contents

described. From the trial record, one cannot discern whether it falls under Schedule I, II, III, IV, V, or none.

{¶ 85} This leads to our revelation of the main fallacy in the state's argument. Contrary to the state's position, not all prescription medications fall under the definition of "controlled substance" as related to the criminal offense of drug possession contained in R.C. 2925.11. Pursuant to R.C. 2925.01(A), a controlled substance for purposes of Chapter 2925 has the same meaning as in R.C. 3719.01. Under R.C. 3719.01(C), a controlled substance means a drug, compound, mixture, preparation, or substance included in Schedule I, II, III, IV, or V. In reviewing these schedules, it is clear that not all prescription medications are listed. For instance, penicillin and other types of antibiotics are available by prescription only, but they are not contained within a schedule. Thus, even if there was evidence that the pill appellant provided to Resident S was his prescription medication, this would not provide sufficient evidence that the pill was a controlled substance as defined in the pertinent statutes.

{¶ 86} Because of these issues, appellant's arguments regarding the failure to provide the expert testimony on the identity of the pill[1] or to provide records to show that appellant was prescribed this pill need not be reached. In fact, they cannot be reached because we cannot say that the witnesses' testimony was improper (due to allegations of hearsay and lacking expert identification) when those witnesses never actually provided any trial testimony at all as to the identity of the pill and as to whether it was prescribed to appellant.

---

[1]Although a pill can be identified without scientific testing or the testimony of a scientist, some type of expert testimony is required, such as that of an experienced police officer. *State v. Maupin* (1975), 42 Ohio St.2d 473, 478-480; *State v. Singh*, 157 Ohio App.3d 603, 2004-Ohio-3213, ¶39. Here, neither witness professed to have any experience identifying pills, and in fact, testified to the opposite as they noted their reliance on the identification of the pill by a nurse.

**{¶ 87}** For all of these reasons, appellant's conviction is reversed, because the state presented insufficient evidence at trial that the pill fit the definition of a controlled substance as required by R.C. 2925.11.

Judgment reversed.

DONOFRIO and DEGENARO, JJ., concur.