DECISION.
{¶ 1} Defendant-appellant Gina Strohm appeals the judgment of the Hamilton County Municipal Court convicting her of three counts of identity fraud in violation of R.C. 2913.49. All three counts involved first-degree misdemeanors. On appeal, she raises three assignments of error in which she contends (1) that the trial court made biased statements during opening and closing arguments that denied her a fair and impartial trial; (2) that the trial court improperly admitted hearsay testimony; and (3) that her convictions for identity fraud were not supported by sufficient evidence and were against the manifest weight of the evidence. Because we find none of the assignments well taken, we affirm the trial court's judgment.
 FACTS {¶ 2} At trial, the state presented the testimony of the victim, Michael Strohm, as well as Indian Hill Ranger Michael Dressel. Michael Strohm testified that he had maintained an account with Cincinnati Bell since 1978, and that he was the only person who had access to this account. In early 1995, he tried to set up Internet access for this account, but an Internet account had already been established. Michael tried numerous times to obtain account information through the Internet by using his social-security number, date of birth, and initials, but he was unable to do so.
 {¶ 3} After talking with his brother, David Strohm, several months later, Michael contacted Cincinnati Bell about his account. He learned that that an Internet account had already been set up in his name, and that it had been used at least 29 times. He was given the email address and password for the Internet account. He testified that the password for his account was Sudbrack, which was the maiden name of Gina Strohm's mother. Upon learning this information, Michael contacted the Indian Hill Rangers. Michael testified that he never gave Strohm permission to set up Internet access to his phone account or to use his phone records on May 22, 2005, June 15, 2005, or June 23, 2005.
 {¶ 4} Indian Hill Ranger Michael Dressel testified that Michael Strohm had contacted him with suspicions that his sister-in-law, Gina Strohm, had been using his phone records. As part of his investigation, Dressel subpoenaed records from Cincinnati Bell that showed that the email address used to obtain access to Michael's account was GStrohm3@aol.com, that the user identification for the account was jms3201, and that the passwords for the account were "abc123," "Sudbrack," "baby boy," and "asshole." When Ranger Dressel questioned Gina Strohm about the matter, she admitted to obtaining access to Michael's account once or twice. An analysis of her computer by the Hamilton County Sheriff's office, however, revealed that she had obtained access to Michael's account approximately 30 times from February 22, 2005, through June 23, 2005. Ranger Dressel testified that Michael's account number with Cincinnati Bell contained a unique three-digit identifier or security code, and that access to his account could not be established without this personal identifier.
 {¶ 5} Gina Strohm testified that she was married to Michael's brother, David Strohm. She admitted using Michael's phone records two times. She testified that the records confirmed her suspicions that her husband was having an affair with a woman in Chicago, that her mother-in-law knew about the affair, and that she was helping her son to hide the affair from her because of the bad blood between them.
 {¶ 6} Strohm testified that she called a customer-service representative for Cincinnati Bell, gave her name, and told the representative that she needed to review Michael's long-distance records so she could complete some tax work for him. The representative told her that she could obtain the records from the Internet. When Strohm said that she did not know how to obtain access to the records on the Internet, the representative gave her the necessary information and helped her to set up the account.
 {¶ 7} Strohm denied using Michael's personal information as her own. She testified that she used her own name, her own email address, and her own password to set up the account. She stated that she never held herself out as Michael Strohm, and that she was unaware at the time that she could not use the information, since a Cincinnati Bell representative had provided it to her. She also stated that she had received no financial gain from obtaining access to Michael's account.
 {¶ 8} During cross-examination, Strohm admitted that she had been untruthful with Ranger Dressel during his investigation. She admitted that she had initially told Ranger Dressel that Michael's phone bill had anonymously appeared in her post office box, but that she had later admitted to him that she had obtained access to Michael's account two times. She explained that she had lied to Ranger Dressel because she was afraid of him. She said that Ranger Dressel had made threatening comments to her during his investigation of an earlier unrelated matter. She had also lied because she was concerned that Ranger Dressel would harm the Cincinnati Bell employee who had helped her to set up the account.
 {¶ 9} When asked if she had obtained Michael's consent to obtain access to his account, Strohm stated that both her husband and Michael knew that she was using Michael's records, and that neither one of them had told her that she could not use them. She denied knowing the three-digit security code for Michael's account. She claimed that she was only given his account number, which she had then used with the Cincinnati Bell representative to set up Internet access to his account. Strohm agreed that the user name she initially selected for the account was "jms3201," but denied that this user name had any relevance to her brother-in-law. She further admitted that she had used Michael's phone records to confront her husband about his affair, as well as about his mother's knowledge of the affair.
 {¶ 10} Michael Strohm testified on rebuttal that his full name was John Michael Strohm and that his initials were JMS. During cross-examination, Michael denied having a conversation with Strohm about her ability to obtain access to his phone records. Michael recalled Strohm telling him that he should check his telephone records because his mother was making numerous long-distance phone calls from his phone. Following this conversation, Michael checked his monthly phone bill, but because his charges were the same as those in previous months, he did not investigate the matter any further. When he next saw Strohm, he told her that she had been mistaken about his mother, but he did not ask how she had obtained her information. Michael stated that his brother, David, had then told him two or three weeks later that Strohm had been using his phone records.
 {¶ 11} At the conclusion of the evidence, the trial court found Strohm guilty of all three charges of misdemeanor identity fraud. The trial court imposed a sentence of 30 days in jail, which it then suspended in favor of a one-year term of community control. Strohm was also required to pay a $250 fine and court costs. Strohm has appealed separately from each of the convictions. We have consolidated the appeals for purposes of argument and decision.
 TRIAL COURT BIAS {¶ 12} In her first assignment of error, Strohm argues she was denied due process of law and a fair trial as a consequence of the bias and prejudice exhibited by the trial court during the trial. She points to several comments by the trial court during opening and closing arguments, which, she alleges, cumulatively demonstrate the trial court's bias against her.
 {¶ 13} "`It is well settled that a criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law.' [Citations omitted.] Judicial bias has been described as `a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.'"[1]
 {¶ 14} Strohm contends that the trial court's comments during opening and closing arguments disclosed not only a bias against her, but a predetermination to find her guilty. During opening argument, Strohm's counsel argued that she could not be convicted of identity fraud under R.C. 2913.49 because Strohm had contacted Cincinnati Bell and had given the company her own name, and because Cincinnati Bell had then assisted her in setting up the account. Counsel also argued that Strohm could not be convicted of misdemeanor identity fraud because the statute required proof of financial value, but there was no financial value to the data that she had obtained.
 {¶ 15} The trial court questioned the legal nature of both these arguments during opening and closing arguments. The trial court asked defense counsel if they were really defenses to the misdemeanor identity fraud or if they were mitigating factors instead. For example, in opening argument, the trial court asked defense counsel whether "Cincinnati Bell could tromp [sic] the Ohio Revised Code. If the code makes a prohibition, can any company, person, or someone else — I'm only saying this to help you all nail down what I'm focused on. Can any person tromp [sic] what the statute prohibits? * * * It's not going to make any difference to me what somebody else said if the act comes within the prohibition of the statute."
 {¶ 16} Defense counsel and the court continued to discuss whether Cincinnati Bell's alleged assistance of Strohm constituted a defense. Defense counsel argued that a recent amendment of the statute supported his interpretation and urged the trial court to look at the statute in light of this amendment. The trial court stated, however, that it was only going to look at the statute as it stood at the time of the charged offenses. The trial court went on to state that it felt that Cincinnati Bell's assistance was more appropriately considered as mitigation. The trial court then explained that it was questioning defense counsel because "[it] always found it helpful if [counsel] had an idea of what the trier of fact was thinking at least at the time [counsel] had an opportunity if [counsel] wished to address those matters during the trial where [counsel] c[ould] change that opinion if it's erroneous."
 {¶ 17} During his closing argument, defense counsel again argued that Strohm could not be convicted of misdemeanor identity fraud because someone at Cincinnati Bell had assisted her and because there was no financial value to the data she had obtained. The trial court continued to question defense counsel's interpretation of the law. The trial court stated that the only reason it was questioning defense counsel was because it wanted defense counsel to have the opportunity to argue his case. The trial court further stated, "I want you to see the factors that I feel troubled over at this point." Defense counsel replied, "No. I sincerely understand. And I think it's an academic issue."
 {¶ 18} As Strohm's counsel acknowledged during his closing argument, the trial court's comments were directed toward the legal issues in the case, not toward the factual ones. The trial court's statements evidenced its intent to make Strohm and her counsel aware of its beliefs regarding the nature of the legal defense she was presenting. The trial court stated that it was providing its view of the law, so that Strohm would have an opportunity to fully argue her position and to correct any misunderstandings the court might have had with respect to the law. Rather than reflecting a predisposition to find her guilty, the trial court's statements during opening and closing arguments showed that it was giving Strohm's counsel the opportunity not only to present her legal arguments, but also to directly address the trial court's concerns before it rendered a final judgment.
 {¶ 19} As the state points out, the only comment made during the trial that could arguably be construed as bias was made during closing argument, when the trial court stated that "she [Strohm] sat here and parsed words from the very beginning of her testimony to the end, to the point where it became, I'm sure you saw, was ludicrous. It was not testifying truthfully, but cleverly." This comment, however, was made after the presentation of the evidence. Because this was a bench trial, the trial court was required to determine the credibility of the witnesses and weigh their testimony. Thus, the trial court's comment did not, in our opinion, reflect any bias toward Strohm. It was directed solely to the weight of Strohm's testimony at trial, a matter that the trial court was entitled to consider in rendering its judgment.[2] Because we cannot conclude that the trial court's comments during opening and closing arguments denied Strohm a fair and impartial trial, we overrule her first assignment of error.
 HEARSAY STATEMENTS {¶ 20} In her second assignment of error, Strohm argues that the trial court's admission of hearsay statements during the testimony of Michael Strohm and Ranger Dressel prejudiced her right to a fair trial.
 {¶ 21} During the trial, Michael Strohm testified about his conversation with a Cincinnati Bell representative. Strohm made several objections to this line of testimony, arguing that it was hearsay. The trial court sustained one of Strohm's objections, stating, "It's sustained. I mean, trust me. There is no jury here. I can separate hearsay."
 {¶ 22} The trial court, however, did permit Michael to testify over objection that a Cincinnati Bell representative had told him that an Internet account had been set up in his name and had provided him with the email name and address that had been used to set up the account, as well as the number of times the account had been used. Strohm argues that the trial court's admission of this hearsay testimony was extremely prejudicial because it established that she was the person who had obtained access to the account by using her email and the password Sudbrack, which was her mother's maiden name.
 {¶ 23} Strohm further contends that the trial court erred in permitting Ranger Dressel to testify regarding Michael's conversations with his brother, David, about his phone records. Ranger Dressel testified that Michael had told him that David had called him on the phone and told him that Gina had thrown his phone records on the table during an argument at their home. Strohm argues that the officer's hearsay testimony was prejudicial because it bolstered an otherwise weak case. Strohm, however, never objected to this testimony at trial.
 {¶ 24} Having reviewed the record, we cannot conclude that these hearsay statements were so prejudicial that they denied Strohm a fair and impartial trial. As we have previously noted, Strohm's case was tried to the bench. In a bench trial, the trial court acts as a factfinder and "is presumed to be able to sort out the irrelevant and prejudicial evidence from that which was probative and admissible."[3] Thus, when considering an argument that hearsay evidence was improperly admitted, an appellate court must presume that the trial court acted impartially and considered only properly admitted evidence.[4]
 {¶ 25} The record reveals that the trial court told Michael Strohm during his testimony that he could not testify about what other people had told him and reminded him of this during his testimony. The trial court even sustained one of Strohm's objections to Michael's testimony, stating that it could separate the hearsay testimony. Thus, we must presume that the trial court did not consider this evidence in arriving at its judgment. Furthermore, Michael's testimony was nothing more than an explanation for how he had learned that Strohm had obtained access to his records and why he had contacted the police.
 {¶ 26} With respect to Ranger Dressel's statements, Strohm did not object at trial and thus has waived all but plain error. Ranger Dressel's testimony, in our view, did nothing more than explain how Michael Strohm had learned that his account had been used and why he had contacted the police. Even if we were to assume that the trial court erred in permitting Michael's and Ranger Dressel's testimony, the record reveals that any error was harmless in light of Strohm's own admission that she had obtained access to her brother-in-law's records, the forensic analysis of her computer, and the Cincinnati Bell records of Michael's account. We, therefore, overrule Strohm's second assignment of error.
 WEIGHT AND SUFFICIENCY {¶ 27} In her third assignment of error, Strohm argues that her convictions were based on insufficient evidence, that they were against the manifest weight of the evidence, and that the trial court erred by denying her motions for a judgment of acquittal.
 {¶ 28} When reviewing a trial court's denial of a Crim.R. 29 motion, this court applies the same standard of review as it would in reviewing a challenge based upon the sufficiency of the evidence.[5] When a defendant claims that his conviction is supported by insufficient evidence, this court must review the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found all the elements of the crime proved beyond a reasonable doubt.[6] When reviewing a defendant's claim that his conviction is against the manifest weight of the evidence, this court must weigh the evidence and the credibility of the witnesses to determine if the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed.[7]
 {¶ 29} Strohm was charged with identity fraud under former R.C. 2913.49(B), which states, "No person, without the express or implied consent of the other person, shall use, obtain, or possess any personal identifying information of another person with intent to do either of the following: (1) [h]old the person out to be the other person; (2) [r]epresent the other person's personal identifying information as the person's own identifying information. The statute further provides the following: "[w]hoever violates this section is guilty of identity fraud. Except as otherwise provided in this division, identity fraud is a misdemeanor of the first degree."[8]
 {¶ 30} Strohm makes the same two arguments on appeal that she presented to the trial court. She argues that because she obtained access to the information with the assistance of a Cincinnati Bell employee and because she was not aware that she had obtained Michael's personal identifying information, she did not hold herself out as Michael Strohm and thus could not be convicted of identity fraud. She additionally argues that she could not be convicted of identity fraud because there was no financial value to the data that she had obtained. We disagree.
 {¶ 31} The state's evidence showed that Strohm had obtained Michael's three-digit personal identifier for his Cincinnati Bell account and then used that identifier to open an Internet account so that she could use his phone records. Computer analysis showed that she had obtained access to Michael's account on three separate occasions in May and June of 2005. Michael testified that Strohm did not have his express or implied consent to set up the Internet account or to have access to his phone records. This evidence was sufficient to show that Strohm had held herself out as her brother-in-law within the meaning of R.C. 2913.49(B)(1).
 {¶ 32} Moreover, contrary to Strohm's assertions, the state did not need to prove any financial value for the data Strohm obtained to convict her of misdemeanor identity fraud. Former R.C. 2913.49(I) provides that the state need only prove value for a felony charge of identity fraud.[9] Consequently, the trial court did not err in overruling Strohm's Crim.R. 29 motion on these two grounds.
 {¶ 33} Nor can we conclude that Strohm's conviction was against the manifest weight of the evidence. Strohm testified that she had called Cincinnati Bell and told the company that she needed Michael's phone records to complete some tax work for him. The trial court stated that it did not believe Strohm's story. But even if Strohm's story were true, it would not change her guilt. Strohm represented herself as her brother-in-law's agent, someone who was authorized to use his personal identifiers when in fact she was not. Because we cannot say that the trial court lost its way and created a miscarriage of justice in finding Strohm guilty of the three counts of identity fraud, we overrule her third assignment of error. Having found no merit to any of Strohm's assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
Hildebrandt, P.J., and Painter, J., concur.
[1] State v. Felder, 8th Dist. No. 87453, 2006-Ohio-5332, at ¶ 29.
[2] See State v. Parker, 8th Dist. No. S-01-028, 2002-Ohio-2688, at ¶ 25; Lorenc v. Sciborowski (Mar. 16, 1995), 8th Dist. No. 66945.
[3] Parker, supra, at ¶ 20.
[4] State v. Stewart, 8th Dist. No. 86411, 2006-Ohio-813, at ¶ 30.
[5] State v. Johnson, 1st Dist. Nos. C-020256 and C-020257, 2003-Ohio-3665, at ¶ 50.
[6] State v. Eley (1978), 56 Ohio St.2d 169, 383 N.E.2d 132.
[7] Tibbs v. Florida (1982), 457 U.S. 31, 102 S.Ct. 2211.
[8] R.C. 2913.49(I).
[9] See State v. Ladson, 8th Dist. No. 85709, 2005-Ohio-5339, at ¶ 25 (concurring opinion by Gallagher, J.).