DECISION AND JUDGMENT ENTRY
{¶ 1} This methamphetamine lab case is before the court on appeal from a judgment of the Ottawa County Court of Common Pleas, which, after a bench trial, found appellants, Joshua McDade and Tanya Blatt, each guilty of illegal assembly or possession of chemicals for manufacture of drugs, illegal manufacture of drugs within the vicinity of a juvenile, possession of drugs, possession of drug paraphernalia, and three counts of child endangering. The trial court sentenced appellants to serve non-minimum *Page 2 
concurrent prison terms. For the reasons that follow, this court affirms, in part, reverses, in part, and remands only the child endangering offenses for resentencing.
 {¶ 2} In 2004, the Ottawa County Drug Task Force received an anonymous tip that appellant Blatt was operating a methamphetamine lab from her Carroll Township, Ottawa County residence. The task force also learned that appellant Blatt's minor children resided in the residence. Based on this tip, the task force conducted a preliminary investigation which included inventorying items found in a trash bag found at a wildlife refuge two to three miles from appellants' residence. Based on the preliminary investigation, the task force secured a search warrant for the residence. The task force also put the residence under surveillance.
 {¶ 3} On the morning of October 5, 2004, after observing three people leave the residence, Carroll Township police officer John Johannsen stopped appellant Blatt for operating a motor vehicle without a license. Ottawa County Sheriff Department Detective Doug St. Clair, and Agent Mark Apple from the Ohio Attorney General Bureau of Criminal Identification and Investigation ("BCI") were also at the scene. Appellant McDade, who was in the vehicle that appellant Blatt was operating, did not have an operator's license either. Appellants were placed under arrest. The officers took an inventory of the vehicle before it was towed and found some items that could be indicative of drug use or possession. The officers then transported appellants back to the police station. *Page 3 
 {¶ 4} Task force member Ottawa County Deputy Sheriff Donald L. St. Clair ("Deputy St. Clair") interviewed appellants separately. Ed Biederstedt from BCI was present during the interviews. At trial, Deputy St. Clair testified that in the presence of investigator Biederstedt, he read appellants their Miranda rights. Appellant Blatt verbally waived those rights; however, appellant McDade invoked his right to an attorney. Appellant Blatt admitted to using illegal drugs, including methamphetamine, in the past and that the officers would find only some "marijuana roaches" at her residence. Appellant McDade only stated that he was living with appellant Blatt at the residence along with three minor children.
 {¶ 5} The search warrant was executed in the afternoon hours of October 5, 2004, when the residence was believed to be uninhabited. Several items that could be indicative of methamphetamine production and use were seized or photographed. Included in the items was a coffee grinder with a white residue inside it, empty shredded pseudoephedrine blister packets, lye, butane, PH test strips, rubber tubing, plastic baggies in several areas, glass test tubes, screenless glass tube-like smoking devices, and several empty containers of Coleman fuel, lacquer thinners, acrylic enamels, and synthetic enamel reducers. The residue in the coffee grinder was tested by the BCI lab and was determined to be pseudoephedrine, a "precursor" to methamphetamine manufacture. Further, the BCI lab confirmed that a white powder residue in at least two of the plastic baggies seized was methamphetamine. *Page 4 
 {¶ 6} After denying appellants' motion for judgment of acquittal, the trial court convicted appellants of the counts in the indictment: illegal assembly or possession of chemicals for manufacture of drugs, a third degree felony in violation of R.C. 2925.041(A) (Count 3); illegal manufacture of drugs within the vicinity of a juvenile, a first degree felony in violation of R.C. 2925.04(A) (Count 4); possession of drugs, a fifth degree felony in violation of R.C. 2925.11(A) (Count 5); possession of drug paraphernalia, a first degree misdemeanor in violation of R.C. 2925.14(C)(1) (Count 9); and three counts of child endangering, a third degree felony in violation of R.C. 2912.22(B)(6) (Counts 6 through 8).
 {¶ 7} At the sentencing hearing, the trial court found the presence of two enumerated seriousness factors from R.C. 2929.12(B)(6) and (7): the offender's relationship with the victim facilitated the offense and the offender committed the offense for hire or as part of an organized criminal activity. Based in part on these two factors, the trial court imposed non-minimum prison terms as follows to be served concurrently: four years on Count 3; six years on Count 4; eleven months on Count 5; thirty days on Count 9; and four years for each of the child endangering counts.
 {¶ 8} Appellants now appeal the judgment against them, setting forth the following assignments of error:
 {¶ 9} "I. The trial court committed reversible error when it found defendant-[sic]appellants guilty based upon testimonial evidence which failed to satisfy the requirements of Evid.R. 702. *Page 5 
 {¶ 10} "II. The defendant-[sic]appellants were denied the effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.
 {¶ 11} "III. The defendant-[sic]appellants' right against self incrimination was violated in that their pre-trial statements were made involuntarily.
 {¶ 12} "IV. The trial court erred in imposing a six year sentence upon each of the defendant-[sic]appellants in that it did not comply with the requirements of Ohio Revised Code Sections 2929.11 et seq.
 {¶ 13} "V. The defendant-[sic]appellants were denied due process of law in that due to the acts of prosecutorial misconduct and/or apparent prejudicial bias of the trial court during the course of the trial the defendant-appellants did not receive a fair trial.
 {¶ 14} "VI. The defendant-[sic]appellants' convictions were against the manifest weight of the evidence."
 {¶ 15} In their first assignment of error, appellants challenge the testing method of appellee's expert BCI forensic chemist, Scott Dobransky, who tested a substance found in the coffee grinder seized from appellants' residence. Appellants assert that Dobransky's testimony lacked any reference to the reliability of the testing methodology which would satisfy the requirements of Evid.R. 702(C) for admissibility.
 {¶ 16} First we note that appellee failed to make a formal motion for admission of Dobransky's testimony as a qualified expert and admission of his testing results as reliable under Evid.R. 702(C) and appellants' trial counsel failed to object to its *Page 6 
admission. Further, there was no affirmative statement on the record by the trial court that Dobransky's testimony was admissible under the requirements of Evid.R. 702. To the extent that appellants complain regarding the trial court's failure to rule specifically on the reliability of the scientific evidence dealing with the testing, such alleged error is subject to only a plain-error review. See State v.Singh, 157 Ohio App.3d 603, 2004-Ohio-3213, ¶ 36. More generally, evidence orders are reviewed to determine whether the trial court abused its discretion. Terry v. Ottawa County Board of Mental Retardation andDevelopmental Delay, 165 Ohio App.3d 638, 2006-Ohio-866 ¶ 12.
 {¶ 17} Ohio Evid.R. 702 provides:
 {¶ 18} "A witness may testify as an expert if all of the following apply:
 {¶ 19} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 20} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 21} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 {¶ 22} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles; *Page 7 
 {¶ 23} "(2) The design of the procedure, test, or experiment reliably implements the theory;
 {¶ 24} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
 {¶ 25} In Daubert v. Merrell Dow Pharmaceuticals, Inc. (1993),509 U.S. 579, the United States Supreme Court explained that the trial court must act as a "gatekeeper" to ensure both the relevance and the reliability of expert testimony before it is admitted at trial. The court listed factors that a trial court may consider in determining whether expert testimony is relevant and reliable: (1) whether the testimony is based on a theory or method that has or can be tested; (2) whether the testimony is based on a theory or method that has been subject to peer review; (3) the error rate of the particular theory or method; and (4) whether the theory or method has gained general acceptance in the field. Id. at 593-594. However, the Court did not intend in listing these factors to design a rigid inquiry; in fact, the Court specifically stated, "Many factors will bear on the inquiry, and we do not presume to set out a definitive checklist or test." The court also noted that the inquiry is to be "flexible." Id. at 594. The Ohio Supreme Court has adopted the Daubert factors. See Miller v. BikeAthletic Co. (1998), 80 Ohio St.3d 607. In Kumho Tire Co. v.Carmichael (1999), 526 U.S. 137, the court clarified that this inquiry is intended not only for "scientific" expert testimony, but it also serves as the inquiry appropriate for expert testimony that is technical or otherwise based on specialized knowledge. Kumho Tire at 147. *Page 8 
 {¶ 26} Dobransky, a 23-year chemist with BCI, testified regarding his extensive training on methamphetamine labs and analysis, including courses on methamphetamine synthesis and production conducted at the American Academy of Forensic Sciences. He testified that the most recent related school he completed was "clandestine Meth lab cases or how to analyze them." Dobransky also testified extensively on his progressive testing methodology which starts out with a series of color tests, and then moves into gas chromatograph mass spectrometry and infrared spectrometry. Such testing methods have been recognized in other drug cases. See Singh at ¶ 32.
 {¶ 27} We find that the expert's testimony on the methodology he employed and its reliability was sufficient to meet the requirements of Evid.R. 702 and Daubert. There was no abuse of discretion or plain error by the trial court related to this issue. Therefore, we find appellants' first assignment of error not well-taken.
 {¶ 28} In their second assignment of error, appellants contend that their trial counsel's deficiencies rose to the level of ineffective assistance of counsel. Appellants allege a number of counsel errors as follows: failure to object to certain witness examination techniques employed by opposing counsel and failure to cross-examine appellee's witnesses; failure to object to admission of Dobransky's test results (see first assignment of error); failure to move to suppress statements made by appellants during investigative interrogations (see third assignment of error), and; "promises" of sentencing leniency made by appellant Blatt's trial counsel if appellants waived their right to a jury. *Page 9 
 {¶ 29} The standard for determining whether a trial attorney was ineffective requires the appellant to show: 1) that the trial attorney made errors so egregious that the trial attorney was not functioning as the "counsel" guaranteed appellant under the Sixth Amendment, and 2) that the deficient performance prejudiced the appellant's defense.Strickland v. Washington (1984), 466 U.S. 668, 686-687. In essence, the appellant must show that the proceedings, due to his attorney's ineffectiveness, was so demonstrably unfair that there is a reasonable probability that the result would have been different absent his attorney's deficient performance. Id. at 693. Furthermore, a court must be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" in reviewing a claim of ineffective assistance of counsel. Id. at 689. A properly licensed attorney in Ohio is presumed to execute his or her duties in an ethical and competent manner. State v.Hamblin (1988), 37 Ohio St.3d 153, 155-56. Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel. State v. Phillips, 74 Ohio St.3d 72, 85,1995-Ohio-171. Even if the wisdom of an approach is debatable, "debatable trial tactics" do not constitute ineffective assistance of counsel. Id . Finally, reviewing courts must not use hindsight to second-guess trial strategy, and must bear in mind that different trial counsel will often defend the same case in different manners.Strickland, supra at 689; State v. Keenan, 81 Ohio St.3d 133, 152,1998-Ohio-459.
 {¶ 30} In the present case, appellants' trial counsel each separately cross-examined appellee's witnesses on a number of items. Deputy St. Clair who supervised the *Page 10 
execution of the search warrant was questioned extensively regarding possible legal or legitimate uses for a number of items found in the residence. Further, he was challenged with regard to the failure to have seized items fingerprinted. Finally, the fact that this was his first methamphetamine lab case was noted. On cross-examination, BCI agent Biederstedt admitted that during the search of the residence, he did not witness an active methamphetamine lab with items at various stages of actual production. Trial counsel did not provide ineffective assistance in the examination of the witnesses. Further, we have already addressed the admissibility of appellee's expert's test results; therefore, trial counsel's failure to object to its admission was not ineffective assistance.
 {¶ 31} Regarding trial counsel's failure to object to testimony regarding appellants' self-incriminating statements, we note that at trial, appellant Blatt's counsel made a general hearsay objection to "anything" her client said during testimony from Deputy St. Clair. Said objection was overruled as a "statement of the defendant," presumably, an admission by a party-opponent under Evid.R. 801(D)(2). We further analyze the admissibility of these statements in addressing appellants' third assignment of error relative to voluntariness.
 {¶ 32} Relative to appellants' waiver of a jury trial, the Supreme Court of Ohio has recently confirmed that there is no requirement for a trial court to interrogate a defendant in order to determine whether he or she is fully apprised of the right to a jury trial. State v.Ketterer, 111 Ohio St.3d 70, 2006-Ohio-5283, ¶ 65; State v. Jells
(1990), 53 Ohio St.3d 22, paragraph one of the syllabus. Further, "[t]he Criminal Rules and the Revised *Page 11 
Code are satisfied by a written waiver, signed by the defendant, filed with the court, and made in open court, after arraignment and opportunity to consult with counsel." Jells at 26. "[I]f the record shows a jury waiver, the verdict will not be set aside except on a plain showing that the waiver was not freely and intelligently made."State v. Bays (1999), 87 Ohio St.3d 15, 19 citing Adams v. United Statesex rel. McCann (1942), 317 U.S. 269, 281. Finally, "[A] written jury waiver is presumed to have been voluntary, knowing, and intelligent."State v. Turner, 105 Ohio St.3d 331, 2005-Ohio-1938, ¶ 25, citingUnited States v. Sammons (C.A.6, 1990), 918 F.2d 592, 597.
 {¶ 33} In the present case, we note that both the written waiver forms and the trial court's inquiry were very brief and did not specifically address any promises made by anyone to either appellant in exchange for their waivers. However, as noted, "`[s]ince Jells holds that no inquiry is required, the trial court's failure to make specific inquiries of the defendant cannot be error.'" Ketterer at ¶ 70 quoting State v.Filiaggi (1999), 86 Ohio St.3d 230, 238. Further, appellants' unsworn allegations in their appellate brief cannot rebut the presumption that the waivers were voluntary, knowing, and intelligent.
 {¶ 34} Even presuming for the sake of argument that counsel's performance was less than competent, appellants have failed to establish the reasonable probability of a different outcome in the proceedings. Therefore, since appellants cannot demonstrate the second prong of theStrickland test, their claims of ineffective assistance of counsel are without merit. Accordingly, appellants' second assignment of error is not well-taken. *Page 12 
 {¶ 35} In their third assignment of error, appellants claim their right against self-incrimination was violated by improper investigative interview techniques. Appellants do not specify the allegedly coercive techniques, but rather focus exclusively on the fact that there was no video recording, audio recording, written statement of acknowledgement, or other extrinsic evidence of the voluntary nature of their statements. In response, appellee argues that appellants waived their objection to admissibility of the interrogation statements by failing to make a timely pretrial motion. However, we cannot accept such an argument on its face without additional analysis because, in a circular fashion, we arrive back at appellants' assignment of error relative to ineffective assistance of trial counsel. Therefore, we consider appellants' substantive arguments on the voluntariness issue.
 {¶ 36} The state carries the burden of proving the voluntariness of a confession by a preponderance of the evidence. State v. Hill (1992),64 Ohio St.3d 313, 318 citing Colorado v. Connelly (1986), 479 U.S. 157. Whether a waiver or confession was voluntary is determined under a totality of the circumstances standard. State v. Clark (1988),38 Ohio St.3d 252, 261. The totality of the circumstances includes "`the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'" In re Watson (1989), 47 Ohio St.3d 86, 88, quotingState v. Edwards (1976), 49 Ohio St.2d 31, paragraph two of the syllabus. Absent evidence that a defendant's will was overborne and his capacity for self-determination *Page 13 
was critically impaired because of coercive police conduct, the decision of a suspect to waive his Fifth Amendment privilege is made voluntarily.State v. Daily (1990), 53 Ohio St.3d 88, 91 citing Colorado v.Spring (1987), 479 U.S. 564, 574.
 {¶ 37} In the present case, we have no evidence that appellants' wills were overborne and their capacity for self-determination was critically impaired because of coercive police conduct. We have Deputy St. Clair's testimony that appellant Blatt verbally waived her rights before making her statements regarding past use of methamphetamine and the presence of at least marijuana evidence at her residence. In addition, Deputy St. Clair testified that BCI Agent Biederstedt was present and witnessed said waiver. While Agent Biederstedt was on the stand, none of the attorneys asked him about the waiver issue.
 {¶ 38} In essence, appellants posit that there exists a presumption of impropriety in the absence of extrinsic evidence of voluntariness. Citing the "better police practice" of recording the entire interview of a suspect, as discussed in State v. Grant (Mar. 23, 2001), 1st Dist. No. C-971001, appellants criticize the investigators' practice in the present case. However, we refuse to leap from a lack of utilization of "better police practice" to a presumption of involuntariness. Further, in Grant, the appellant presented specific allegations of allegedly coercive statements by the interviewing police officers suggestive of leniency, yet the court ultimately determined that the appellant's inculpatory statements should not be suppressed. In Grant, even without the recording of these *Page 14 
inculpatory statements, the court determined, under the totality of circumstances, that the appellant's statements to the police were the product of free and deliberate choice.
 {¶ 39} Appellants cite our decision in State v. Hicks, 6th Dist. Nos. L-04-1021 and L-04-1022, 2005-Ohio-6848, and seem to imply that extrinsic evidence of a suspect's voluntariness is an absolute requirement. In Hicks there was extrinsic evidence for this court to review since the appellant executed a written form waiving hisMiranda rights and the entire interview was videotaped. However, nothing in Hicks makes such extrinsic evidence an absolute requirement.
 {¶ 40} In the present case, in the absence of any specific allegations, the totality of the circumstances indicates that age, mentality, the length, intensity, and frequency of interrogation, the existence of physical deprivation or mistreatment, and the existence of threat or inducement were not factors. The only factor potentially "in appellants' favor," comes from a review of the presentence investigation reports, which indicates that neither appellant has an extensive criminal history. However, in light of Deputy St. Clair's testimony of appellants' voluntariness, the trial court's apparent determination of St. Clair's credibility, and the lack of specific allegations of coercive conduct, we find under the totality of the circumstances that appellants' statements to the police were the product of free and deliberate choice. Accordingly, appellants' third assignment of error is not well-taken.
 {¶ 41} In their fourth assignment of error, appellants argue that the trial court did not comply with the sentencing statutes, particularly as it relates to the factors of the *Page 15 
seriousness of the offenses that the sentencing court must consider as enumerated in R.C. 2929.12(B). Specifically, appellants contend that their sentences on the child endangering and the illegal manufacture offenses were not supported by the record because there was no evidence that either their relationship to appellant Blatt's children "facilitated" the endangering offense or that they committed the manufacture offense for hire or as part of an organized criminal activity.
 {¶ 42} Initially, we note that portions of several sentencing statutes were found unconstitutional in State v. Foster, 109 Ohio St.3d 1,2006-Ohio-516, but that R.C. 2929.12 was not one of them. State v.Hunger, 11th Dist. No. 2005-L-127, 2006-Ohio-6533, ¶ 23. AlthoughFoster eliminated the requirement that trial courts state their reasons for imposing greater than minimum sentences on the record (State v.Tobey, 9th Dist. No. 05CA0103-M, 2006-Ohio-5069, ¶ 36 citingFoster, paragraph one of the syllabus), in the present case, the trial court did so. We must address the alleged error that was put on the record. Since Foster was decided, courts have addressed similar issues regarding whether the trial court erred by sentencing an appellant contrary to R.C. 2929.12 based upon findings not supported in the record. See Hunger, ¶ 25 citing State v. Spicuzza, 11th Dist. No. 2005-L-078, 2006-Ohio-2379, ¶ 6. Appellants' assignment of error addresses this narrow issue of the trial court's application of the R.C.2929.12(B) seriousness factors.
 {¶ 43} With regard to the standard of our review, even afterFoster, an appellate court may not disturb an imposed sentence unless it finds by clear and convincing *Page 16 
evidence that the sentence is not supported by the record, or is "otherwise contrary to law." R.C. 2953.08(G)(2). State v. Rhodes, 12th Dist. No. CA2005-10-426, 2006-Ohio-2401, ¶ 4; State v. Vickroy, 4th Dist. No. 06CA4, 2006-Ohio-5461, ¶ 15; State v. White, 11th Dist. No. 2005-A-0086, 2006-Ohio-5370, ¶ 13. Clear and convincing evidence is "that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 44} In the present case, relative to the child endangering counts, appellants submit that the trial court erred in concluding that pursuant to R.C. 2929.12(B)(6), their relationship with the minor children/victims in the residence "facilitated the offense." Further, regarding the possession and manufacture offenses, appellants contend that the trial court erred in concluding that pursuant to R.C.2929.12(B)(7), they "committed the offense for hire or as part of an organized criminal activity."
 {¶ 45} Regarding the seriousness factor found relative to the child endangering offenses, the trial court acknowledged that the particular provision under which appellants were charged was "brand-new"[1] and there was no case law under it.
 {¶ 46} R.C. 2919.22(B) states:
 {¶ 47} "No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age: *Page 17 
 {¶ 48} "* * *
 {¶ 49} "(6) Allow the child to be on the same parcel of real property and within one hundred feet of, or, in the case of more than one housing unit on the same parcel of real property, in the same housing unit and within one hundred feet of, any act in violation of section 2925.04 or2925.041 of the Revised Code when the person knows that the act is occurring, whether or not any person is prosecuted for or convicted of the violation of section 2925.04 or 2925.041 of the Revised Code that is the basis of the violation of this division."
 {¶ 50} The penalty portion at R.C. 2919.22(E)(3) provides:
 {¶ 51} "If the offender violates division (B)(2), (3), (4), or (6) of this section, except as otherwise provided in this division, endangering children is a felony of the third degree. * * * If the offender violates division (B)(6) of this section and the drug involved is methamphetamine, the court shall impose a mandatory prison term on the offender as follows:
 {¶ 52} "(a) If the violation is a violation of division (B)(6) of this section that is a felony of the third degree under division (E)(3) of this section and the drug involved is methamphetamine, except as otherwise provided in this division, the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the third degree that is not less than two years. * * *"
 {¶ 53} In the present case, as it relates to appellants' argument, the issue of the interplay between the elements of the child endangering offense at R.C. 2919.22(B)(6) *Page 18 
(allowing child to be on same property and within 100 feet of illegal manufacture of drugs) and the sentencing seriousness factor at R.C.2929.12(B)(6) (relationship of offender to child-victim facilitated the offense) appears to be new with no case law addressing it. However, we believe that some principles articulated in case law applying the seriousness factor of the offender-victim relationship to other offenses is instructive. It appears that this seriousness factor has been applied most often[2] to child abuse, sex crimes, and domestic violence cases where clearly, the relationship between the offender and the victim facilitated the offense. In these cases, the offense was directly related to the offender's position of trust relative to the victim.
 {¶ 54} In the present case, one could theorize that appellants' relationship to the victims "facilitated" the offense of child endangering to the extent that by virtue of being the mother of the victims and live-in boyfriend of the mother of the victims, the children lived in the residence where the volatile chemicals were "cooked" to make the methamphetamine. However, this appears to stretch the bounds of logic relative to the seriousness factor at R.C. 2929.12(B)(6). In fact, neither appellee cites any, nor could this court find any, sentencing cases involving something somewhat analogous — drug trafficking in the vicinity of a juvenile — in which the sentencing court utilized the offender-victim relationship seriousness factor. Further, when we focus on the word "facilitate," which means "to make easier,"[3] we find that the seriousness factor does not *Page 19 
fit the child endangering offense at R.C. 2919.22(B)(6). In addition, we find that the trial court erred when essentially it found that by virtue of their relationship to the children, appellants' conduct was more serious "`than conduct normally constituting the offense.'" State v.Troyer (Mar. 7, 2000), Cuyahoga C.P. No. CR-379460. The conduct normally constituting the offense is manufacturing the volatile methamphetamine in the presence of (anyone's) children. We do not find the offense more serious if the offender is related to the children.
 {¶ 55} We find that the evidence clearly and convincingly demonstrates that the trial court erred in finding that the seriousness factor of R.C. 2929.12(B)(6) existed for the child endangering offenses under R.C.2919.22(B)(6). Since this is the only seriousness factor found by the trial court relative to the child endangering offenses, we conclude that clear and convincing evidence supports that the sentences on these offenses is not supported by the record, or is "otherwise contrary to law" and they must be remanded for resentencing as requested by appellants.
 {¶ 56} Regarding the seriousness factor found relative to the possession and manufacture offenses, we note that a conviction of these offenses does not mean automatically that that seriousness factor of committing the offense for hire or as part of an organized criminal activity is present. See State v. Kerr, 6th Dist. No. WD-05-080,2006-Ohio-6058, ¶ 39.
 {¶ 57} In the present case, the amount of methamphetamine found in the residence was trace amounts in plastic baggies. The $85 cash found at the residence, as admitted *Page 20 
by various law enforcement officers in testimony, was an amount that could as likely have been mere grocery money. There was no testimony that the volume of the methamphetamine precursors found in the residence were of such a level that it was for mass production, rather than production for personal use by appellants. However, the trial court noted upon review of appellants' presentence investigation report that both appellants reported "rarely" using methamphetamine "in the past." From these statements, the trial court inferred as follows:
 {¶ 58} "Both Ms. Blatt and Mr. McDade state that they rarely use meth, which means that the whole manufacturing process going on in the house had to be for resale. If they don't use themselves, what are they making it for? It has to be a sale situation, and the Court takes that into consideration."
 {¶ 59} Clearly, the trial court used this observation to find the seriousness factor of committing the offense for hire or as part of an organized criminal activity was present. We do not find that the trial court erred in doing so.
 {¶ 60} Accordingly, appellants' fourth assignment of error is well-taken as to the child endangering offenses only and this portion of the sentence must be remanded for resentencing.
 {¶ 61} Appellants' fifth assignment of error claims that prosecutorial misconduct and prejudicial bias of the trial court denied them a fair trial. The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights. State v. Newton, 108 Ohio St.3d 13, 2006-Ohio- *Page 21 
81, ¶ 92 citing State v. Smith (1984), 14 Ohio St.3d 13, 14. Regarding bias of the trial court, "`It is well settled that a criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law.' [Citations omitted.] Judicial bias has been described as `a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.'" State v. Felder, 8th Dist. No. 87453,2006-Ohio-5332, ¶ 29 quoting State v. LaMar, 95 Ohio St.3d 181,2002-Ohio-2128, ¶ 34; State v. Strohm, 1st Dist. Nos. C-060056, C-060057, C-060058, 2006-Ohio-6161, ¶ 13.
 {¶ 62} Appellants claim prejudice in the following conduct by the prosecutor and the trial court[4]: attempting to direct the manner in which cross-examination ought to be conducted; improper exchanges between the trial court and the prosecutor; not letting the witness finish his answer; making improper prejudicial comments on the nature of the evidence during its presentation; and inaccurate summations and conclusions during closing arguments.
 {¶ 63} Upon review of the record, we note the somewhat unorthodox conduct of the prosecutor during defense counsel's cross-examination of BCI chemist Dobransky by interjecting as follows: *Page 22 
 {¶ 64} "Perhaps she's not asking the right question. He doesn't understand. * * *"
 {¶ 65} Further, in an apparent attempt to streamline testimony regarding the inventorying of the evidence items sent to BCI, the trial court seemed to coach the prosecutor during her direct examinations and interjected at several points as follows: "Maybe a general question regarding all the items that were taken to BCI and back would suffice," "Why are we going through all that again? * * * Give him the inventory list and ask if he found all these things. It's been excruciatingly detailed," and "Could I ask a question? * * * Mr. Dobransky, the procedures that you've outlined in identifying Exhibit SW-1 and SW-5, were those the same procedures * * * followed in your treatment of every single exhibit that you received in this case?"
 {¶ 66} We note also that the trial court made a few colorful comments while witnesses were being examined on the stand. The trial court commented that appellant McDade's counsel was "getting into rocket science" when she inquired of BCI Agent Biederstedt regarding the specific legitimate use for brake fluid found in the residence. In an apparent effort to move the cross-examination of BCI chemist Dobransky along, at one point, the trial court also interjected: "Depends on the talent of the cook. He's already said that." These comments do not appear to show bias against appellants.
 {¶ 67} During closing arguments, the trial court commented on manufacturer directions on a pseudoephedrine package found in the residence that directed a user not to crush or dissolve the tablets. Defense counsel had argued a possible legitimate purpose in grinding pseudoephedrine for the children to take, possibly mixed with applesauce. *Page 23 
Upon reading the crush-prohibition on the package the trial court stated, "There goes the applesauce [defense theory]." Further, the trial court asked the prosecutor questions regarding whether she believed the pseudoephedrine or the phosphorus on the match striking plates would be considered "a chemical that you may count toward knowingly possessing." Finally, the trial court corrected an earlier comment he had made regarding the legitimate-use dosage of pseudoephedrine, stating:
 {¶ 68} "I should make one comment after having viewed the 240 tab and the instructions, it seems that a single 240 tab within a 24-hour period would be an appropriate dosage for either a child or an adult so that my [earlier] comment that 240 is enough to take your head off is perhaps ill-advised and careless. I'd like the record to reflect that."
 {¶ 69} We find that there was no prosecutorial misconduct because either the remarks were not improper or they did not prejudicially affect appellants' substantial rights. In addition, the trial court's "coaching" of the prosecutor related to establishing the proper inventorying of evidence appeared to be a harmless method that encouraged some judicial efficiency that did not bias appellants. Further, we cannot conclude that the trial court's comments denied appellants a fair and impartial trial. We are mindful that this was a bench trial where the trial court, rather than a jury, was the factfinder. Further, the trial court's question of the prosecutor during closing arguments regarding pseudoephedrine and phosphorus as "chemicals" under the statute was directed toward a legal issue in the case. See Strohm, ¶ 18. The trial court's statements during closing *Page 24 
arguments showed that it was giving counsel the opportunity not only to present their legal arguments, but also to directly address the trial court's concerns before it rendered a final judgment.
 {¶ 70} Accordingly, we find appellants' fifth assignment of error not well-taken.
 {¶ 71} Finally, we consider appellants' sixth assignment of error in which they contend that their convictions were against the manifest weight of the evidence. Under a manifest weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the factfinder's resolution of the conflicting testimony. State v.Thompkins (1997), 78 Ohio St.3d 380, 387. The appellate court, "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction.'" Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 72} Appellants continue to assert that the test results from the powdery substance in the coffee grinder should not have been admitted into evidence and, therefore, the amount of forensic evidence was "minute and sketchy." We disagree. We have already found that the test results were admissible. Further, although the trial judge seemed to emphasize the substance in the coffee grinder, the BCI chemist also testified to the presence of methamphetamine in at least two of the plastic baggies seized at the *Page 25 
residence. After reviewing the transcript of the trial proceedings and considering the credibility of the witnesses, we find that the trier of fact did not "lose its way" and thereby create such a manifest miscarriage of justice that appellants' convictions should be reversed as being against the manifest weight of evidence. Appellants' sixth assignment of error is therefore, not well-taken.
 {¶ 73} For all of the foregoing reasons, the judgment of the Ottawa County Court of Common Pleas is affirmed, in part, and reversed, in part. Appellants' convictions are affirmed. Their sentences on only the child endangering offenses are vacated, and this matter is remanded for resentencing on those offenses.
 {¶ 74} Appellants and appellee are each ordered to pay one-half of the costs of this appeal pursuant to App.R. 24. Judgment of the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Ottawa County.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Mark L. Pietrykowski P.J., Arlene Singer, J. CONCUR.
Peter M. Handwork, J., dissents, and writes separately.
[1] R.C. 2919.22(B)(6) was effective on August 11, 2004 under S.B. 58. 16.
[2] This court also notes the existence of some theft and burglary cases in which this seriousness factor was utilized because the offender's relationship to the victim provided access to the home where the offenses occurred. See State v. Barry, 9th Dist. No. 05CA0072-M,2006-Ohio-2275; State v. Ambriez, 6th Dist. No. L-03-1051, 2004-Ohio-5230; State v. Marcum, 7th Dist. No. 02 CO 72,2003-Ohio-6391.
[3] Webster's Ninth New Collegiate Dictionary (1990) 444.
[4] We note that some courts have ruled that an appellant's exclusive remedy if he believed that the trial judge was biased or prejudiced against him at any stage of his case was to file an affidavit of disqualification pursuant to R.C. 2701.03 and that an appellate court lacks jurisdiction to void the judgment of the trial court because of a judge's bias or prejudice. See State v. Bacon, 8th Dist. No. 85475,2005-Ohio-6238, ¶ 66; State v. Earls, 1st Dist. No. C-040531,2006-Ohio-4029, ¶ 16-18; State v. Manuel, 12th Dist. No. CA2002-12-293,2003-Ohio-5713 ¶ 34. In the present case, given appellants' assertions of ineffective assistance of trial counsel, we will examine the substantive issues related to claimed trial court bias. *Page 26