[Cite as *State v. Osler*, 2011-Ohio-3219.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


|  |  |  |
|---|---|---|
| | : | JUDGES: |
| STATE OF OHIO | : | John W. Wise, P.J. |
| | : | Julie A. Edwards, J. |
| Plaintiff-Appellee | : | Patricia A. Delaney, J. |
| | : | |
| -vs- | : | Case No. 10-CA-31 |
| | : | |
| | : | |
| ERIC S. OSLER | : | O P I N I O N |
| | | |
| Defendant-Appellant | | |



CHARACTER OF PROCEEDING:           Criminal Appeal from Licking County
                                   Court of Common Pleas Case No.
                                   09-CR-607

JUDGMENT:                          Affirmed In Part, Reversed and
                                   Remanded In Part

DATE OF JUDGMENT ENTRY:            June 24, 2011

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

EARL L. FROST                             SCOTT D. SCHOCKLING
Licking County Assistant                  5073 Bixby Road
Prosecuting Attorney                      Groveport, Ohio  43125
20 South Second Street
Fourth Floor
Newark, Ohio  43055

*Edwards, J.*

{¶1}    Defendant-appellant, Eric Osler, appeals his conviction and sentence from the Licking County Court of Common Pleas on one count each of trafficking in crack cocaine, possession of crack cocaine and possession of marijuana. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}    On November 30, 2009, the Licking County Grand Jury indicted appellant on one count of trafficking in crack cocaine in violation of R.C. 2925.03(A)(1)(C)(4)(a), a felony of the fifth degree, one count of possession of crack cocaine in violation of R.C. 2925.11(A)(C)(4)(d), a felony of the second degree,  and one count of possession of marijuana in violation of R.C. 2925.11(A)(C)(3)(a), a minor misdemeanor. At his arraignment on December 8, 2009, appellant entered a plea of not guilty to the charges.

{¶3}    Subsequently, a jury trial commenced on March 24, 2010. The following testimony was adduced at trial.

{¶4}    Officer Jarrod Conley of the Newark Police Department testified that he was part of a neighborhood impact unit normally known as Team 7 that deals primarily with drugs. On November 17, 2009, Officer Conley was in uniform working patrol when they received a call from dispatch to call Peggy Dunlap. Officer Conley testified that he was with Dunlap when she had a series of phone conversations with appellant that were recorded. According to the Officer, during the calls, Dunlap ordered $50.00 worth of crack cocaine and appellant agreed to sell her the same. After appellant and Ralph Pettigrew went to the boarding house where Dunlap lived, they knocked on the door and Officer Conley opened the door and said "Newark Police." Officer Conley then

grabbed appellant's right arm and gave him to Officer Doug Wells who restrained and handcuffed him.

{¶5} Officer Conley testified that he helped detain Pettigrew, who was attempting to flee. When asked whether Pettigrew could have thrown a bag of crack cocaine that was found on the ground, Officer Conley testified that Pettigrew could not have thrown the same because he was watching Pettigrew's hands the entire time.

{¶6} At trial, Peggy Dunlap testified that she had prior felonies for passing bad checks, burglary and breaking and entering. She testified that she contacted the Newark Police Department after appellant told her that he was going to punch her if she did not have the $50.00 when he arrived at her boarding house. Dunlap testified that she had several phone calls with appellant that date about purchasing crack cocaine and that, at some point during the calls, appellant indicated that he was going to send a man named "Ralphie" over with the crack cocaine. According to Dunlap, during the calls, appellant agreed to sell her crack cocaine.

{¶7} Officer Doug Wells of the Newark Police Department testified that he was present when Dunlap made several telephone calls to appellant about purchasing drugs. He testified that he saw appellant throwing a bag of crack cocaine onto the ground after the police made contact with him at Dunlap's boarding house. The following is an excerpt from his testimony at trial:

{¶8} "Q. Okay. Now, what happens? He's [appellant] got his hands in his pockets. What are you doing?

{¶9} "A. I've got him bent over the banister. I'm ordering him to take his hands out of his pockets. He's refusing to do it. I order several times, take your hands - -

move your hands out of your pockets. He refuses to do so, so at that time I strike Mr. Osler in the back of the head and neck area with a hammer fist strike ordering him to take his hands out. At that time his right hand comes out in a motion like this (indicating) where his hand opens up. As I look up, I see this bag hit the house next to us, which is because the opening is only maybe two feet apart from the two houses. It hits that house and then lands on the ground. I continue with Mr. Osler trying to get his hands behind his back to get him handcuffed. He's refusing to listen and obey my orders of putting his hands behind his back so I strike him again on the back of the neck." Transcript at 85.

{¶10} When asked, Officer Wells testified that he saw the bag in appellant's hands, saw appellant throw the same and then saw the bag when it hit the ground. He further testified that it was not possible that Pettigrew could have thrown the bag to the ground. The bag tested positive for 12.7 grams of crack cocaine.

{¶11} Officer Wells further testified that he believed that a small bag of marijuana was recovered from appellant. Testimony was adduced at trial that the bag contained 1.07 grams of marijuana.

{¶12} After appellee rested, the defense called Misty Sherman as a witness. Sherman testified that she had known appellant since 2004 and that they were really good friends. She testified that she had a misdemeanor charge for theft in 2001. When asked how she found out about the incident in this case, Sherman testified that she was home in bed the early morning or later evening of November 17 or 18th when "Ralphie" came busting in my door…" Transcript at 118. She testified that Ralphie was a friend of her daughter's. The following occurred on the record:

{¶13} "Q. Did he [Pettigrew] indicate where he was coming from?

{¶14} "MR. FROST: Objection.

{¶15} "THE COURT: Counsel want to approach.

{¶16} "(WHEREUPON, A DISCUSSION WAS HELD AT THE BENCH, OFF THE RECORD AND OUT OF THE HEARING OF THEY JURY.)

{¶17} "THE COURT: The State's objection will be granted.

{¶18} "MS COCHRAN: I have no further questions.

{¶19} "THE COURT: Cross-examination.

{¶20} "MR. FROST: No sir.

{¶21} "THE COURT: witness may step down."  Transcript at 119-120.

{¶22} Shannon Johnson, appellant's girlfriend, testified that she was home on the night of November 17th or early morning of November 18th and that appellant was at her house around 11:30 p.m. with Ralph Pettigrew and a man named Lonny.  Johnson testified that she was present when appellant started receiving calls from Peggy Dunlap. Johnson testified that Pettigrew had the crack cocaine to sell to Dunlap and that appellant did not. On cross-examination, Johnson testified that appellant had set up a deal to sell crack cocaine to Dunlap.

{¶23} At the conclusion of the evidence and the end of deliberations, the jury, on March 24, 2010, found appellant guilty of trafficking in crack cocaine and possession of crack cocaine. The trial court found appellant guilty of possession of marijuana. As memorialized in a Judgment Entry filed on March 25, 2010, appellant was sentenced to an aggregate prison sentence of four (4) years and eleven (11) months.

{¶24} Appellant now raises the following assignments of error on appeal:

{¶25} "I. THE TRIAL COURT ERRED WHEN IT DID NOT ALLOW HEARSAY TESTIMONY ADMISSIBLE UNDER EVID. R. 504(B)(3) THAT THE CRACK COCAINE BELONGED TO PETTIGREW.

{¶26} "II. THE JURY VERDICTS FINDING OSLER GUILTY OF THE CRACK COCAINE OFFENSES ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶27} "III. THE TRIAL JUDGE'S DECISION FINDING OSLER GUILTY OF POSSESSION OF MARIJUANA IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I

{¶28} Appellant, in his first assignment of error, argues that the trial court erred when it refused to allow Misty Sherman to testify about statements that Ralph Pettigrew allegedly made to her that he, not appellant, was the source of the crack cocaine recovered at Dunlap's boarding house. Appellant contends that the trial court erred in refusing to allow such hearsay testimony because it satisfied the requirements of Evid. R. 804(B)(3).

{¶29} In the case sub judice, Sherman testified that Ralph Pettigrew came to her house on the late evening of November 17th or the early morning of November 18th. When asked if he indicated where he was coming from, appellee objected, allegedly on the basis of hearsay. After a discussion was held off of the record, the trial court sustained the objection and Sherman was excused. Pettigrew had been subpoenaed for trial but did not appear.

{¶30} As is stated above, appellant contends that while in Sherman's presence, Pettigrew stated that he, not appellant, was the source of the crack cocaine found at the

boarding house and that the trial court erred in not allowing such testimony.   However, there is no indication in the transcript that such testimony was actually proffered.[1] Appellant specifically cites to the following as evidence that while in Sherman's presence Pettigrew stated that he, rather than appellant, was the source of crack cocaine:

{¶31} "THE COURT: There was an objection by the State to hearsay testimony that was to be elicited out of the testimony of Misty Sherman.  Let's put that on the record at this time.  Ms. Cochran, did you wish to place on the record the basis for your wanting the testimony.

{¶32} "MS. COCHRAN: Yes, Your Honor.  The declarant in this case is unavailable.  The defense had tried to serve him at both addresses that the Court had, that this Court had and that the municipal court had for him.  And as the statements, the alleged statements or the statements that we wanted to be admitted were against his interest, we had asked that they be admitted against his interest.  There should have been or there was reasonable indicia of reliability.  The statement was voluntary; it was self-inculpatory; there were other witnesses to the statement; it was contemporaneous to the incident or close in time. There was not an attempt by the accomplice to completely exonerate himself and shift the blame to the Defendant.  It was spontaneous and there was firsthand - - well, not firsthand knowledge, but the speaker had firsthand knowledge of the incident.

{¶33} "Also, this was the declaration of a person that was at the scene and present and we would ask that the Court allow that those statements against interest be admitted."  Transcript at 127-128.

---

[1] It appears that Sherman's alleged testimony may have been discussed off-the-record.

**{¶34}** However, what Sherman's alleged testimony would have been is unclear from the record and was not proffered.

**{¶35}** The failure to proffer or object at trial does not preserve the issue for appellate review. *State v. Grubb* (1986), 28 Ohio St.3d 199, 203, 503 N.E.2d 142.

**{¶36}** Appellant's first assignment of error is, therefore, overruled.

II, III

**{¶37}** Appellant, in his second and third assignments of error, argues that his convictions for trafficking in crack cocaine, possession of crack cocaine and possession of marijuana are against the manifest weight of the evidence.

**{¶38}** When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. See *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541, 546, *State v. Jenks,* 61 Ohio St.3d 259, 273, 574 N.E.2d at 503. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jenks*, 61 Ohio St.3d at 273.

**{¶39}** On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised

only in the exceptional case in which the evidence weighs heavily against the judgment." *Thompkins,* supra at 387, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.

{¶40} Appellant was convicted of trafficking in cocaine pursuant to R.C. 2925.03(A)(1)(C)(4)(A.). R.C. 2925.03 states, in relevant part, as follows: "(A) No person shall knowingly do any of the following: (1) Sell or offer to sell a controlled substance…"

{¶41} Appellant specifically maintains that appellee failed to show that he either offered to sell or sold crack cocaine to Dunlap. He notes that Shannon Johnson testified that Ralph Pettigrew had the crack cocaine.

{¶42} However, Johnson, on cross-examination testified that appellant set up the deal to sell crack cocaine to Peggy Dunlap. Moreover, as is stated above, Officer Conley testified that during a series of telephone calls that were recorded, appellant agreed to sell Dunlap $50.00 worth of crack cocaine. The officer testified that he recognized appellant's voice based on his past contact with appellant. Officer Doug Wells, who was also present when the calls were made, similarly testified that he recognized appellants' voice on the calls.  Officer Wells also testified that when appellant showed up at Dunlap's residence, he saw appellant throw a bag onto the ground. The bag tested positive for crack cocaine. Based on the foregoing, we find that

appellant's conviction for trafficking in crack cocaine is not against the manifest weight or sufficiency of the evidence.

{¶43} Appellant further challenges his conviction for possession of crack cocaine in violation of R.C. 2925.11(A)(C)(4)(d). R.C. 2925.11 states, in relevant part, as follows: "(A) No person shall knowingly obtain, possess, or use a controlled substance." R.C. 2925.01(K) provides that "'possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

{¶44} Appellant specifically argues that the testimony shows that he did not possess or have control over the crack cocaine on the date in question. However, as stated above, Officer Wells testified that he saw appellant throw a bag that was later determined to contain crack cocaine onto the ground. In addition, Officer Conley testified that he saw appellant throw the bag and that it was impossible for Pettigrew to have thrown the bag of crack cocaine on the ground because he watched Pettigrew's hands the entire time. The jury, as trier of fact, clearly found their testimony credible. We find that appellant's conviction for possession of crack cocaine is not against the manifest weight or sufficiency of the evidence.

{¶45} Finally, appellant argues that the trial court erred in convicting him of possession of marijuana. At trial, Officer Wells testified that he "believed" that a small bag that tested positive for marijuana was recovered from appellant. That was the only testimony adduced at trial with respect to such charge. Based on such testimony, we

find that appellant's conviction for possession of marijuana was against the manifest weight and sufficiency of the evidence.

**{¶46}** Appellant's second assignment of error is overruled and appellant's third assignment of error is sustained.

**{¶47}** Accordingly, the judgment of the Licking County Court of Common Pleas is affirmed in part and reversed and remanded in part.

By: Edwards, J.

Wise, P.J. and

Delaney, J. concur

_____

_____

_____

JUDGES

JAE/d0509

[Cite as *State v. Osler*, 2011-Ohio-3219.]

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| ERIC S. OSLER | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 10-CA-31 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas is affirmed in part and reversed and remanded to the trial court for further proceedings. Costs assessed 80% to appellant and 20% to appellee.

_____

_____

_____

JUDGES