[Cite as *State v. Jack*, 2012-Ohio-2131.]


# IN THE COURT OF APPEALS OF OHIO
# THIRD APPELLATE DISTRICT
# MARION COUNTY


STATE OF OHIO,

    PLAINTIFF-APPELLEE,                   CASE NO. 9-11-59

    v.

TAKISHA M. JACK,                     O P I N I O N

    DEFENDANT-APPELLANT.


Appeal from Marion Municipal Court
Trial Court No. CRB 1102517

Judgment Reversed and Cause Remanded

Date of Decision:  May 14, 2012


APPEARANCES:

    *Kevin P. Collins*  for Appellant

    *Steven E. Chaffin*  for Appellee

**SHAW, P.J.**

{¶1} Defendant-appellant Takisha M. Jack ("Jack") appeals the November 15, 2011 judgment of the Marion Municipal Court in Marion County, Ohio finding her guilty following a bench trial on charges of Possession of a Schedule III Substance in violation of R.C. 2925.11(A)/(C)(2), a misdemeanor of the first degree, and Possession of Marijuana in violation of R.C. 2925.11(A)/(C)(3), a minor misdemeanor.

{¶2} The charges arose out of an incident occurring September 3, 2011 wherein Jack and her passenger, Darthaniel Hamilton ("Hamilton"), were traveling south from Detroit toward Columbus on U.S. Route 23 in Marion County. While in Marion County, Jack was pulled over by Trooper David G. Shockey ("Shockey") for driving 87 mph in a 65 mph zone.

{¶3} Upon pulling Jack over, Shockey approached Jack's vehicle from the passenger side. After asking some preliminary questions, Shockey asked if there were any weapons in the vehicle. Hamilton, Jack's passenger, said that he had a permit, then when Shockey asked Hamilton specifically if he had a weapon on him, Hamilton responded that he did.

{¶4} During Shockey's questioning of Jack and Hamilton, Shockey detected the odor of an alcoholic beverage from inside Jack's vehicle. Due to Hamilton having a weapon and the odor of the alcoholic beverage, Shockey called

for support. Sergeant Rosario came to the scene to assist with Hamilton. Shockey then took Jack and placed Jack in his patrol car, and Sergeant Rosario took Hamilton and placed Hamilton in his patrol car.

{¶5} Shockey administered a portable breath test to Jack with the result coming back as .0467. Meanwhile, Hamilton was placed under arrest for a concealed carry violation. During a search of Jack's vehicle, Shockey located a cup with alcohol in it inside the car, alcohol containers in the driver's side door and a small amount of purported marijuana located in the driver's side console. In the middle console Shockey found a prescription bottle for Hydrocodone that contained 185 pills. According to Shockey the label on the bottle indicated there should have been 120 pills and there were also two different types of pills in the bottle.

{¶6} Jack was subsequently arrested and charged with Possession of a Schedule III Substance in violation of R.C. 2925.11(A)/(C)(2), a misdemeanor of the first degree, and Possession of Marijuana in violation of R.C. 2925.11(A)/(C)(3), a minor misdemeanor.

{¶7} On September 13, 2011, Jack was arraigned and pled "not guilty" to the charges.

{¶8} On November 10, 2011, a bench trial was held wherein Jack proceeded *pro se*. At trial, the State called Trooper Shockey as its sole witness. Shockey testified to the events as described above, and then the State rested.

{¶9} Jack called Hamilton in her defense who testified that Jack was unaware that the medication or the marijuana was in the car as Hamilton had used the car earlier that day and acquired both things during that time. Jack then testified, stating that she had no knowledge that the substances were in her car.

{¶10} After the defense rested, the court found Jack guilty on both possession charges. On the marijuana possession charge Jack was sentenced to pay a $100 fine and court costs and her license was ordered suspended for six months. On the possession of a Schedule III Controlled Substance charge Jack was sentenced to 90 days in jail with 87 days suspended, and a $400 fine with $250 suspended. Jack was also ordered to undergo an alcohol and drug screen through the Municipal Court Probation Department and to attend any counseling or programs that might be ordered.

{¶11} It is from this judgment that Jack appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR I**

**THE RECORD CONTAINED INSUFFICIENT EVIDENCE TO SUPPORT DEFENDANT-APPELLANT'S CONVICTION FOR POSSESSION OF A SCHEDULE III SUBSTANCE IN VIOLATION OF R.C. 2925.11(A)/(C)(2).**

## ASSIGNMENT OF ERROR II

**DEFENDANT-APPELLANT'S CONVICTION FOR POSSESSION OF A SCHEDULE III SUBSTANCE IN VIOLATION OF R.C. 2925.11(A)/(C)(2) IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.**

## ASSIGNMENT OF ERROR III

**THE RECORD CONTAINED INSUFFICIENT EVIDENCE TO SUPPORT DEFENDANT-APPELLANT'S CONVICTION FOR POSSESSION OF MARIJUANA IN VIOLATION OF R.C. 2925.11(A)/(C)(3).**

## ASSIGNMENT OF ERROR IV

**DEFENDANT-APPELLANT'S CONVICTION FOR POSSESSION OF MARIJUANA IN VIOLATION OF R.C. 2925.11(A)/(C)(3) IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.**

## ASSIGNMENT OF ERROR V

**THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY FAILING TO GIVE NOTICE OF TRIAL IN CASE NO. CRB 1102517B.**

## ASSIGNMENT OF ERROR VI

**THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY FAILING TO PROPERLY EXPLAIN HER RIGHTS AT HER INITIAL APPEARANCE.**

{¶12} As Jack's first four assignments of error are interrelated, we elect to address them together. Moreover, as these assignments of error are dispositive of this case, the remaining assignments of error are rendered moot.

*First, Second, Third, and Fourth Assignments of Error*

{¶13} In her first, second, third, and fourth assignments of error, Jack argues that there was not sufficient evidence to support her convictions for Possession of a Schedule III Substance in violation of R.C. 2925.11 (A)/(C)(2) and Possession of Marijuana in violation of R.C. 2925.11(A)/(C)(3), and that her convictions were against the manifest weight of the evidence. Specifically Jack argues that the "possession" element of each charge was lacking as Jack claims she was unaware the substances were in her car.

{¶14} Reviewing a challenge to the sufficiency of the evidence requires this court to examine the evidence in the light most favorable to the prosecution. The Ohio Supreme Court has set forth the sufficiency of the evidence test as follows:

> **An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.**

*State v. Jenks*, 61 Ohio St.3d 259 (1991), at syllabus, superseded by state constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89 (1997).

{¶15} Unlike our review of the sufficiency of the evidence, an appellate court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In reviewing whether the trial court's judgment was against the weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *Id*. In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Andrews*, 3d Dist. No. 1-05-70, 2006-Ohio-3764, ¶ 30, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983); *Thompkins*, 78 Ohio St.3d at 387.

{¶16} In the case *sub judice*, Jack argues specifically that the State failed to prove the element of "possession"; however, a challenge to sufficiency of the evidence merits a review of all the essential elements of a crime. Moreover, "'Crim.R. 52(B) allows us to notice plain errors or defects when an accused's substantial rights have been violated. The appellee was required by law to present sufficient evidence as to each element of the offense. * * * When a necessary element has not been shown, we are allowed to notice that omission when the

appellant's rights are violated.'" *State v. Adkisson*, 8th Dist. No. 81329, 2003-Ohio-3322, ¶ 6, quoting *In the Matter of: Theonne Mason*, 8th Dist. No. 73259 (1999), at * 5.

**{¶17}** Jack was charged with two counts of possession in violation of R.C. 2925.11. The charges on Jack's complaint read:

**Takisha M. Jack**

**AT CITY OF MARION/MARION COUNTY, OHIO ON OR ABOUT THE 3rd DAY OF September 2011 DID knowingly obtain, possess, or use a controlled substance, to wit: Hydrocodone (Schedule III).**

**IN VIOLATION OF O.R.C.# 2925.11**

**\* \* \***

**Takisha M. Jack**

**AT CITY OF MARION/MARION COUNTY, OHIO ON OR ABOUT THE 3rd DAY OF September 2011 DID knowingly obtain, possess, or use a controlled substance, to wit: Marijuana[.]**

**IN VIOLATION OF O.R.C.# 2925.11**

(Doc. No. 1).

**{¶18}** In order to convict Jack of Possession of a Schedule III Substance, or for Possession of Marijuana, the State is required to prove all the elements of R.C. 2925.11(A). Penalties for violating R.C. 2925.11 differ depending on the

Case No. 9-11-59

"controlled substance" proven to have been possessed. The provisions of R.C. 2925.11 relevant to this case read,

**(A) No person shall knowingly obtain, possess, or use a controlled substance.**

**＊＊＊**

**(C) Whoever violates division (A) of this section is guilty of one of the following**

**(2) If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule III, IV, or V., whoever violates division (A) of this section is guilty of possession of drugs. The penalty for the offense shall be determined as follows:**

**(a) Except as otherwise provided in division (C)(2)(b), (c), or (d) of this section, possession of drugs is a misdemeanor of the first degree or, if the offender previously has been convicted of a drug abuse offense, a felony of the fifth degree.**

**＊＊＊**

**(3) If the drug involved in the violation is marihuana or a compound mixture, preparation, or substance containing marihuana other than hashish, whoever violates division (A) of this section is guilty of possession of marihuana. The penalty for the offense shall be determined as follows:**

**(b) Except as otherwise provided in division (C)(3)(b), (c), (d), (e), (f), or (g) of this section, possession of marihuana is a minor misdemeanor.**

{¶19} In order for Jack to be convicted of these charges, the State has to show that the substances Jack "knowingly possessed" for each conviction were the controlled substances as defined in the complaint, i.e. a Schedule III Substance

and Marijuana. Failure to prove that the substance is a "controlled substance" is fatal to the prosecution. *See In Re D.F.*, No. 7th Dist. No. 10 NO 374, 193 Ohio App.3d 78, 2011-Ohio 1004, ¶ 81-87 (holding testimony merely that drug was a "prescription drug" was insufficient to prove it was a controlled substance).

{¶20} Pursuant to R.C. 2925.51, the State may establish *prima facie* evidence of the content, identity and weight of a substance through lab testing.[1] But, courts in Ohio have held that lab testing is not always necessary to prove the contents of a substance. For example, courts have held that police officers trained and qualified may identify marijuana without a laboratory test as long as there is a sufficient foundation laid to establish familiarity. *State v. Maupin*, 42 Ohio St.2d 473 (1975), paragraph two of the syllabus. In addition, the Ohio Supreme Court has gone so far as to hold that a drug user lay witness can establish his or her competence to express an opinion on the identity of a controlled substance *if* a sufficient foundation for the testimony is established. *State v. McKee*, 91 Ohio St.3d 292 (2001), at syllabus.

{¶21} However, failure to establish either a foundation for a witness' identification or a lab test proving the contents of controlled substances has been found fatal to a conviction warranting reversal. *See McKee*, *supra*, at 297-98; *see also State v. Adkisson*, *supra* at ¶ 7 (holding that absent lab test results, rock of

---

[1] *See* R.C. 2925.51 for requirements that must be met before the *prima facie* showing is established.

crack cocaine introduced into evidence was insufficient to prove substance was cocaine for the purposes of possession charge); *State v. Bullitt*, 8th Dist. No. 86738, 166 Ohio App.3d 365, 2006-Ohio-2304, ¶ 17 (holding failure to introduce any analysis of purported cocaine residue insufficient to prove possession); *In Re D.F.*, *supra* at ¶ 81-87 (holding testimony that drug was a prescription drug was insufficient to prove it was a controlled substance); *State v. Osler*, 5th Dist. No. 10-CA-31, 2011-Ohio-3219, ¶ 45 (holding officer's testimony that he "believed" substance found tested positive for marijuana not sufficient to support conviction); *State v. Blevins*, 4th Dist. No. 10CA3353, 2011-Ohio-3367, ¶ 21 (holding insufficient evidence to support conviction for possession where a syringe purportedly containing methamphetamine was never tested and there was no other testimony to substantiate that the substance was a controlled substance).

**{¶22}** In order to prove that Jack was in possession of a Schedule III controlled substance in this case, the State called one witness, Shockey, who offered the following testimony.

> **We found the alcohol containers obviously in the driver's side door, the console of the driver's side door there was a small amount of marijuana located there. In the middle console was a prescription bottle that contained 185 Hydrocodone-related pills, the bottle was indicated [sic] there should have been 120 in it, there were two different types of medication, but basically the same chemically.**

(Tr. at 14).

{¶23} The foregoing testimony is the sum total of all the evidence purporting to establish that the pills found in Jack's vehicle constituted a Schedule III Substance.

{¶24} At no other time in the State's case are the pills explicitly identified. Similarly, nothing was elicited on cross-examination during Jack's defense to identify the pills. When Hamilton, Jack's witness, was testifying, he never specifically identified the pills, referring to the pills only as "medication." (Tr. at 22, 27, 31). Jack also never identified the pills in her testimony, claiming to have no knowledge of them being in the car.

{¶25} Although Shockey makes the statement that the two pills inside the bottle were "basically the same chemically" there was no evidence presented at trial by the State that the pills were tested and found to be Hydrocodone. In fact, there is no evidence anywhere in the record that the pills were taken and analyzed by a lab and found to be Hydrocodone as they were alleged to be in the complaint. Furthermore, neither the pills themselves nor the pill bottle were introduced into evidence to give any indication as to what the bottle contained. Moreover, Shockey offers no testimony as to any familiarity with the pills to lay a foundation for his identification. In fact, Shockey's testimony does not establish that the pills even were Hydrocodone as alleged in the complaint. His only testimony regarding the pills is that they were "Hydrocodone-*related*."

{¶26} Based on the utter lack of proof that any pills found in Jack's car were, in fact, Hydrocodone or any other Schedule III Substance, we cannot find that there is sufficient evidence to convict Jack on this charge. Under these circumstances, the conviction is also against the manifest weight of the evidence. Therefore, we sustain Jack's first and second assignments of error.

{¶27} With regard to Jack's conviction for Possession of Marijuana, unlike his testimony regarding the pills, Shockey did explicitly testify that he found a "small amount of marijuana." (Tr. at 14). While courts in Ohio have held that an experienced narcotics officer could field test or identify marijuana sufficiently for a conviction of Possession in violation of R.C. 2925.11, no testimony was presented as to Shockey's experience with marijuana or other narcotics. The only testimony relative to Shockey's experience was a claim that he had worked as a State Trooper for 12 years and was familiar with the protocols for the enforcement of traffic laws. (Tr. at 6).

{¶28} Furthermore, Shockey did not testify as to how he identified the marijuana. He also did not establish that he had *any* expertise to identify marijuana. At trial, no lab results or field tests were mentioned and nothing was introduced into evidence to prove the contents of the marijuana. The purported marijuana was also not introduced into evidence.

{¶29} Although lab tests may not be necessary to prove a substance is marijuana and a lay witness may be able to testify as to what a substance is for the purposes of a possession conviction if a sufficient foundation is laid, a conclusory statement that a bag of marijuana was found inside of Jack's car is simply insufficient to prove that any substance found was actually marijuana.[2] Based on the foregoing, we cannot conclude that the evidence in this case is sufficient to establish that the substance found was marijuana. The conviction on this charge is also against the manifest weight of the evidence. We therefore sustain Jack's third and fourth assignments of error.

{¶30} Accordingly, Jack's first, second, third, and fourth assignments of error are sustained. Assignments of error five and six are rendered moot.

{¶31} For the foregoing reasons, the judgment of the trial court is reversed and the cause is remanded to the Marion Municipal court to discharge Jack on all claims.

*Judgment Reversed and*
*Cause Remanded*

**PRESTON and ROGERS, J.J., concur.**

**/jlr**

---

[2] We note here that Hamilton, Jack's witness, specifically mentions marijuana in his testimony. (Tr. at 30). However, the State did not establish a sufficient familiarity through Hamilton for lay-witness identification of marijuana to support a conviction of possession. Conclusory statements made by a lay witness without a foundation are insufficient to prove the contents of a substance.